1                     **IN THE UNITED STATES DISTRICT COURT**
                     **FOR THE SOUTHERN DISTRICT OF TEXAS**
2                            **HOUSTON DIVISION**

3   UNITED STATES OF AMERICA        )         NO. 4:17-CR-116-3
                                    )
4                                   )
    VS.                             )          Houston, Texas
5                                   )            3:08 p.m.
                                    )
6   JASON T. POSEY                  )          October 11, 2017

7


8
    *********************************************************
9
                         **RE-ARRAIGNMENT**
10
        **BEFORE THE HONORABLE CHIEF JUDGE LEE H. ROSENTHAL**
11
                  **UNITED STATES DISTRICT JUDGE**
12

13  *********************************************************

14  APPEARANCES:

15  FOR THE GOVERNMENT:

16       Mr. Ryan Ellersick
         Mr. Robert Heberle
17       Mr. Charles Escher
         United States Department of Justice
18       Public Integrity Section
         Criminal Division
19       1400 New York Avenue NW
         Washington, DC  20530
20       Tel:  202-514-1412

21  FOR THE DEFENDANT:

22       Mr. Philip Harlan Hilder
         Hilder & Associates
23       819 Lovett Blvd.
         Houston, Texas  77006
24       Tel:  713-655-9111

25

1  COURT REPORTER:

2       Ms. Kathleen K. Miller, CSR, RMR, CRR
        515 Rusk, Room 8004
3       Houston, Texas  77002
        Tel:  713-250-5087
4
   Proceedings recorded by mechanical stenography.
5  Transcript produced by computer-assisted transcription.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2  (Defendant present.)

3              THE COURT:  Are we ready to proceed in the

4  Posey plea?

03:08:29    5              MR. ELLERSICK:  Yes, Your Honor.

6              THE COURT:  Is your client here, Mr. Hilder?

7              MR. HILDER:  Yes, Your Honor.  Philip Hilder

8  for the defense, and Mr. Posey is in the courtroom.

9              MR. ELLERSICK:  Good afternoon, Your Honor.

03:08:38   10  Ryan Ellersick for the United States.  Robert Heberle and

11  Charles Escher also here for the United States.

12              THE COURT:  Very good.  Thank you.

13              MR. ELLERSICK:  Your Honor, if we could just

14  bring up one logistical matter.

03:08:56   15              THE COURT:  Sure.

16              MR. ELLERSICK:  We caught a last minute typo in

17  the plea agreement.  It was just a misnumbering of

18  paragraphs, so we have now a corrected version that we can

19  execute, but we just want to let the Court know about that.

03:09:07   20  It is nothing substantive.  It was just a misnumbering.

21              THE COURT:  That is fine.  I am glad I am not

22  the only one who makes those kinds of errors.

23                  All right.  Mr. Posey, I understand that

24  you have conferred in depth and in detail with your lawyer,

03:09:21   25  and that based on those discussions and your own

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

1 consideration, it is your decision to plead guilty; is that

2 correct?

3          THE DEFENDANT:  Yes, ma'am.

4          THE COURT:  All right.  The purpose of this

03:09:31   5 hearing is to let me be sure, before I can accept your

6 plea, that, first of all, you know what you're doing.

7          THE DEFENDANT:  Okay.

8          THE COURT:  Secondly, I need to be sure that

9 you understand the rights that you are giving up by

03:09:46  10 pleading guilty.

11          THE DEFENDANT:  Yes, ma'am.

12          THE COURT:  And, finally, I need to be sure

13 that you did what you're pleading guilty for having done.

14 And for all of these areas I need to be sure that you are

03:10:01  15 doing this voluntarily of your own free will.

16          THE DEFENDANT:  Yes, ma'am.

17          THE COURT:  Do you understand that I am going

18 to ask you questions about each of those areas?

19          THE DEFENDANT:  Yes, ma'am.

03:10:10  20          THE COURT:  If you answer any of the questions

21 falsely, you can be prosecuted separately for perjury

22 because you will be sworn to tell the truth before we

23 begin.  Do you understand that?

24          THE DEFENDANT:  Yes, ma'am.

03:10:22  25          THE COURT:  Would you please swear the witness?

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

1              CASE MANAGER:  Raise your right hand, please.

2    (Defendant sworn.)

3              THE DEFENDANT:  Yes, ma'am.

4              CASE MANAGER:  Thank you.

03:10:34    5              THE COURT:  All right.  Mr. Posey, you're now

6    under oath.  Your answers may later be used against you in

7    a separate prosecution for perjury if they are false.  Do

8    you understand that?

9              THE DEFENDANT:  Yes, ma'am.

03:10:46   10              THE COURT:  All right.  If you don't understand

11   any question that I ask you, will you ask me to repeat it

12   or rephrase it before you answer it?

13              THE DEFENDANT:  Yes, ma'am.

14              THE COURT:  If at any time you want to ask your

03:10:56   15   lawyer a question, you may.  You don't have to answer my

16   question first or ask my permission.  Do you understand

17   that?

18              THE DEFENDANT:  Yes, ma'am.

19              THE COURT:  Would you please tell me your full

03:11:08   20   name, how old you are, and the highest level of education

21   you have?

22              THE DEFENDANT:  Jason Tyler Posey, age 46, and

23   I am one semester short of my degree from the University of

24   Mississippi.

03:11:22   25              THE COURT:  This question will sound silly in

1   light of your answer, but I have to ask it.  Can you read

2   and write English easily?

3                    THE DEFENDANT:  Yes, ma'am.

4                    THE COURT:  Have you ever been treated for any

03:11:32   5   kind of mental illness or any psychiatric or psychological

6   problem?

7                    THE DEFENDANT:  No, ma'am.

8                    THE COURT:  Are you taking -- are you addicted

9   to any drug?

03:11:40   10                    THE DEFENDANT:  No, ma'am.

11                    THE COURT:  Are you addicted to alcohol?

12                    THE DEFENDANT:  No, ma'am.

13                    THE COURT:  Are you taking any medication?

14                    THE DEFENDANT:  Blood pressure medication.

03:11:46   15                    THE COURT:  All right.  Does it have any side

16   effects that impact your ability to understand what is

17   going on around you or to think clearly?

18                    THE DEFENDANT:  No, ma'am.

19                    THE COURT:  Are you sick in any way today that

03:11:55   20   would keep you from understanding what's going on here?

21                    THE DEFENDANT:  No, ma'am.

22                    THE COURT:  Do you feel well?

23                    THE DEFENDANT:  I'm sorry?

24                    THE COURT:  Do you feel well?

03:12:03   25                    THE DEFENDANT:  Yes.  Yes, ma'am.

1    THE COURT:  Good.  And are you presently under

2  the influence of any drug or any alcoholic beverage?

3    THE DEFENDANT:  No, ma'am.

4    THE COURT:  Have you had enough time to talk

03:12:11    5  with your lawyer?

6    THE DEFENDANT:  Yes, ma'am.

7    THE COURT:  Are you satisfied with the advice

8  and the help that your lawyer has given you?

9    THE DEFENDANT:  Yes, ma'am.

03:12:18    10    THE COURT:  Do you want to ask him anymore

11  questions or get anymore advice before we go on?

12    THE DEFENDANT:  No, ma'am.

13    THE COURT:  Mr. Hilder, have you had enough

14  time to investigate this case?

03:12:26    15    MR. HILDER:  Yes, Judge.

16    THE COURT:  Are you satisfied that Mr. Posey

17  fully understands the charges he faces and the punishment

18  that he may face?

19    MR. HILDER:  I do.

03:12:35    20    THE COURT:  Has he been able to cooperate with

21  you and has he cooperated with you fully?

22    MR. HILDER:  Yes, he has.

23    THE COURT:  Do you have any questions as to

24  Mr. Posey's competence to plead guilty?

03:12:46    25    MR. HILDER:  I do not.

1          THE COURT:  Does the government?

2          MR. ELLERSICK:  No, Your Honor.

3          THE COURT:  Nor does the Court.  Court finds,

4    based on all of the filings, prior proceedings, and the

03:12:56   5    proceeding here today that Mr. Posey is competent to

6    knowingly, voluntarily, and intelligently plead guilty.

7               Mr. Posey, one of the things I told you I

8    had to be sure about is that you understand the rights that

9    you're giving up when you plead guilty.  I am going to go

03:13:13   10   over with you the rights that you would have if you

11   continued to plead not guilty because that's what you're

12   giving up.  Do you understand?

13         THE DEFENDANT:  Yes, ma'am.

14         THE COURT:  All right.  Do you understand,

03:13:22   15   first of all, that you do have the right to continue to

16   plead not guilty?

17         THE DEFENDANT:  Yes, ma'am.

18         THE COURT:  If you were to do so, you would

19   have the right to have the charges against you tried before

03:13:33   20   a jury made up of 12 citizens of this district, or if

21   everybody agreed, before the Judge.  Do you understand that

22   right?

23         THE DEFENDANT:  Yes, ma'am.

24         THE COURT:  At this trial, you would have the

03:13:44   25   right to be represented by a lawyer throughout.  If you

1  could not afford one, one would be appointed for you.  Do

2  you understand that right?

3             THE DEFENDANT:  Yes, ma'am.

4             THE COURT:  At this trial that you would have

03:13:58   5  if you continued to plead not guilty, the burden would be

6  on the government to prove your guilt beyond a reasonable

7  doubt.  You would have no burden to prove your own

8  innocence or to present any evidence at all.  Do you

9  understand that?

03:14:12   10            THE DEFENDANT:  Yes, ma'am.

11            THE COURT:  To prove your guilt beyond a

12  reasonable doubt, which is the government's burden, it

13  would call witnesses who would come to court and testify.

14  You understand that you would have the right to see and

03:14:22   15  hear each of these witnesses, and to have your lawyer

16  cross-examine them on your behalf?

17            THE DEFENDANT:  Yes, ma'am.

18            THE COURT:  You would have no obligation to

19  present any witnesses or evidence yourself, but you would

03:14:33   20  have the right to do so.  That would include the right to

21  subpoena witnesses to require them to come to court to

22  testify.  Do you understand that right?

23            THE DEFENDANT:  Yes, ma'am.

24            THE COURT:  You would also have the right to

03:14:44   25  decide whether you wanted to testify or not.  Because you

1  cannot be compelled to testify against yourself, if you

2  decided to remain silent, you would be entitled to have the

3  jury instructed that they could not use your silence as

4  evidence of guilt.  Do you understand that?

03:15:04    5                THE DEFENDANT:  Yes, ma'am.

6                THE COURT:  And at this trial you could not be

7  convicted unless every member of the jury found that you

8  were guilty beyond a reasonable doubt.  Do you understand

9  that the verdict would have to be unanimous before you

03:15:17   10  could be convicted?

11                THE DEFENDANT:  Yes, ma'am.

12                THE COURT:  By entering a guilty plea, if I

13  accept your plea, you will be convicted with no trial at

14  all.  Do you understand that?

03:15:28   15                THE DEFENDANT:  Yes, ma'am.

16                THE COURT:  You are giving up the right to a

17  trial and all the rights that go along with having a trial.

18  Do you understand that?

19                THE DEFENDANT:  Yes, ma'am.

03:15:35   20                THE COURT:  You're also giving up the right in

21  your plea agreement to file an appeal or a later challenge,

22  and I am going to go over that in more detail.  But you

23  also need to understand that even apart from your plea

24  agreement, just by pleading guilty, you're giving up the

03:15:53   25  right to make a number of arguments later on to try to get

1  your conviction set aside, or your sentence set aside or

2  reduced, that you might have been able to make if you had

3  gone to trial and been convicted.  Do you understand that

4  that's another consequence of your guilty plea?

03:16:08   5            THE DEFENDANT:  Yes, ma'am.

6            THE COURT:  Mr. Posey, I don't know if you have

7  any licenses, professional licenses, or anything like that,

8  but a conviction for the kind of offenses that you are

9  pleading guilty to can lead to the inability to qualify

03:16:34   10  ever for professional licenses in a number of fields,

11  including the practice of law.  Do you understand that

12  that's another potential consequence of a guilty plea?

13            THE DEFENDANT:  Yes, ma'am.

14            THE COURT:  Did you and your lawyer carefully,

03:16:56   15  line by line, go over together the written charges against

16  you in the indictment, particularly Counts 4, 8 and 22 of

17  the first superseding indictment?

18            THE DEFENDANT:  Yes, ma'am.

19            THE COURT:  Did you go over the whole

03:17:13   20  indictment carefully?

21            THE DEFENDANT:  Carefully, yes, ma'am.

22            THE COURT:  And did you have a chance to ask

23  Mr. Hilder all the questions you wanted to about the

24  indictment?

03:17:22   25            THE DEFENDANT:  Yes, ma'am.

1          THE COURT:  Did he explain it to you to your

2    satisfaction?

3          THE DEFENDANT:  Yes, ma'am, he did.

4          THE COURT:  I want to go over with you the

03:17:35   5    elements of the claims that the government presents in

6    Count 4, which is wire fraud -- mail fraud; Count 8, which

7    is wire fraud; and Count 22, which is money laundering,

8    because those are the counts you're pleading guilty to.

9              Do you understand that?

03:17:46   10         THE DEFENDANT:  Yes, ma'am.

11         THE COURT:  The government claims and at trial

12   would have to prove with respect to Count 4 first that you

13   knowingly devised or intended to devise a scheme to

14   defraud, and you don't have to be the one who came up with

03:18:03   15   it in the first instance; second, that the scheme to

16   defraud employed false material representations; third,

17   that you mailed something or caused something to be sent

18   through United States Postal Service, or a private or

19   commercial interstate carrier for the purpose of executing

03:18:25   20   the scheme or attempting to do so; and finally, that you

21   acted with the specific intent to defraud.

22             Do you understand what the government

23   claims you did in Count 4?

24         THE DEFENDANT:  Yes, ma'am.

03:18:38   25         THE COURT:  Count 8 is similar.  The difference

1   is that in the third element, instead of sending something

2   through the mail or through a carrier, the allegation is

3   that you transmitted or caused to be transmitted by way of

4   wire communications in interstate commerce any writing,

03:19:01   5   sign, signal, picture or sound for the purpose of executing

6   the scheme.  And, again, that you acted with the specific

7   intent to defraud.

8               Do you understand what the government

9   claims you did in Count 8 on wire fraud?

03:19:14   10          THE DEFENDANT:  Yes, ma'am.

11          THE COURT:  Count 22 is, of course, different.

12   It is money laundering.  The government would have to

13   prove at trial, first, that you knowingly engaged or

14   attempted to engage in a monetary transaction; second, that

03:19:33   15   it was for a value or of a value greater than $10,000;

16   third, that it involved criminally derived property;

17   fourth, that the criminally derived property was derived

18   from a specified unlawful activity; fifth, that you knew

19   that the monetary transaction involved criminally derived

03:19:57   20   property; and finally, that it took place, the transaction

21   took place, within the United States.

22               You understand what the government claims

23   you did that violated Count 22, money laundering?

24          THE DEFENDANT:  Yes, ma'am.

03:20:14   25          THE COURT:  Under the statute, Mr. Posey, the

1 maximum for the two fraud violations are 20 years each, and

2 a fine that can go as high as $250,000, or the greater of

3 twice the gross gain or the gross loss resulting from the

4 offense.

03:20:41  5                      And here it would be the twice the gross

6 gain, correct?

7                      MR. ELLERSICK:  I think that might be right,

8 Your Honor.  Yes.

9                      THE COURT:  I mean, that would be the higher

03:20:51  10 amount?

11                      MR. ELLERSICK:  Yes.

12                      THE COURT:  What do you estimate the fraud loss

13 to be here?

14                      MR. ELLERSICK:  It's -- we estimate it's the

03:20:58  15 combination of the $350,000 and then the 457,000 and

16 change, but that's a matter that the parties are free to

17 argue at sentencing under this agreement.

18                      THE COURT:  I understand that but I'm trying to

19 convey the worst possible set of consequences.

03:21:13  20                      MR. ELLERSICK:  Yes.

21                      THE COURT:  So the maximum fine would be

22 twice 350,000 plus what?

23                      MR. ELLERSICK:  $450,571.65.

24                      THE COURT:  Okay.  Mental arithmetic was never

03:21:32  25 my strong suit.  Do it for me.

1              So, yeah, take out your cell phone, in

2 other words.

3              MR. ELLERSICK:  So the combination of those

4 two --

03:22:07    5              THE COURT:  -- sources of money.

6              MR. ELLERSICK:  Yes.  Times two would be

7 $1,601,143.03.

8              THE COURT:  All right.  And would that apply

9 separately potentially for each count?  Stacking?

03:22:25   10              MR. ELLERSICK:  One moment, Your Honor.

11              THE COURT:  It's a fine.  It's not restitution.

12              MR. ELLERSICK:  We think that it would, Your

13 Honor.

14              THE COURT:  I think so, too.  So, again, one

03:22:46   15 million --

16              MR. ELLERSICK:  -- 601,143.03.

17              THE COURT:  Now multiply that by 3.  The

18 potential stacking effect for each of the three counts.

19 Assuming that it would be the same for money laundering,

03:23:07   20 which is, again, the greater of twice the gross gain

21 resulting from the offense, and we obviously have to argue

22 about what that means with money laundering.

23              MR. ELLERSICK:  And the total multiplied by

24 three, Your Honor, is $4,803,429.09.

03:23:25   25              THE COURT:  All right.  So, Mr. Posey, you're

1  looking at a maximum prison sentence of up to 20 years each

2  on the two fraud counts, and up to five years on the money

3  laundering count.  That is a total maximum imprisonment

4  that you face of 45 years.  Do you understand that?

03:23:48  5                 THE DEFENDANT:  Yes, ma'am.

6                 THE COURT:  On top of that, you would face

7  liability for a potential fine of over 4 million dollars.

8  Do you understand that?

9                 THE DEFENDANT:  Yes, ma'am.

03:23:56  10                THE COURT:  On top of that, you would owe the

11  government $300 as a mandatory assessment.  Do you

12  understand that?

13                THE DEFENDANT:  Yes, ma'am.

14                THE COURT:  You would be subject to supervised

03:24:09  15  release following your release from prison.  That would be

16  for up to three years.  If during supervised release, you

17  violated any of the conditions of supervised release, you

18  would be sent back to prison for up to two years regardless

19  of any time you might have spent on supervised release

03:24:31  20  before you committed the violation.  Do you understand

21  that?

22                THE DEFENDANT:  Yes, ma'am.

23                THE COURT:  And you understand, Mr. Posey, that

24  there is no parole in the federal prison system?

03:24:40  25                THE DEFENDANT:  Yes, ma'am.

1          THE COURT:  Any sentence that you get is not

2  going to be shortened by parole.

3          THE DEFENDANT:  Yes, ma'am.

4          THE COURT:  And this defendant faces no

03:24:51   5  restitution obligation, correct, or does he?

6          MR. ELLERSICK:  Under the plea agreement, Your

7  Honor, he does, potentially.

8          THE COURT:  All right.  And that would be up to

9  $350,000, or the larger amount?

03:25:06   10         MR. ELLERSICK:  It would be for both.  It's

11  the -- the fraud counts he's pleading guilty to would

12  encompass both.

13         THE COURT:  So the total for that would be

14  $350,000 plus the --

03:25:18   15         MR. ELLERSICK:  The 457,000.

16         THE COURT:  All right.  You understand that on

17  top of this 4-million-dollar fine that you could face

18  having to pay, you would also be subject to a restitution

19  obligation in the amount the government just stated?

03:25:34   20         THE DEFENDANT:  Yes, ma'am.

21         THE COURT:  And you could be required to pay

22  both.  Do you understand that, sir?

23         THE DEFENDANT:  Yes, ma'am.

24         THE COURT:  All right.  Did you and your lawyer

03:25:50   25  read the plea agreement line by line, word by word?

1           THE DEFENDANT:  Yes, ma'am.

2           THE COURT:  Same question I asked you a minute

3 ago.  Did you have an opportunity to review it and ask your

4 lawyer all the questions you had about it?

03:26:05   5           THE DEFENDANT:  Yes, ma'am.

6           THE COURT:  Do you have any other questions you

7 want to ask?

8           THE DEFENDANT:  No, ma'am.

9           THE COURT:  All right.  I want to go over a few

03:26:14   10 of the provisions in the plea agreement with you.

11               First, you understand, sir, that your case

12 is subject to the sentencing guidelines?

13           THE DEFENDANT:  Yes, ma'am.

14           THE COURT:  Those guidelines are advisory only,

03:26:34   15 but they are a starting point for where the Court has to

16 look, that the Court has to determine in figuring out the

17 sentence that you ought to get.

18               I told you the maximum, but that may or

19 may not be what sentence I actually impose.  You understand

03:26:56   20 that it could be different?

21           THE DEFENDANT:  Yes, ma'am.

22           THE COURT:  And you understand that the -- even

23 starting with the guideline sentence, the Court would have

24 to first, before it could even make that calculation, first

03:27:10   25 go through the work of figuring out the guideline that

1  applies to you, and what the sentencing range is.  Do you

2  understand that?

3            THE DEFENDANT:  Yes, ma'am.

4            THE COURT:  There is no set agreement here on

03:27:22  5  the sentence that the defendant will actually receive, is

6  there?

7            MR. ELLERSICK:  That is correct, Your Honor.

8            THE COURT:  And the government has not agreed

9  to a specific sentence, correct?

03:27:33  10            MR. ELLERSICK:  That's correct.

11            THE COURT:  And it has not agreed that it would

12  seek the lowest end of any sentence, or a particular

13  downward departure?

14            MR. ELLERSICK:  That is correct.

03:27:43  15            THE COURT:  All right.  In fact, the government

16  has the ability under this plea agreement to ask the Court

17  for the highest possible sentence available under the

18  guidelines, or even under the statute, correct?

19            MR. ELLERSICK:  Yes.

03:27:59  20            THE COURT:  Other than asking for the

21  adjustment for acceptance --

22            MR. ELLERSICK:  Yes.

23            THE COURT:  -- which you have agreed to do?

24            MR. ELLERSICK:  We have agreed what provision

03:28:05  25  of the guidelines will apply.

1           THE COURT:  Right.  And the Court could reject

2  that.

3           MR. ELLERSICK:  Yes.

4           THE COURT:  Bottom line, Mr. Posey, is that all

03:28:16   5  of the work necessary to figure out if the government is

6  right about the guideline provision that applies, and the

7  range that would then follow, and even knowing that, what

8  guidelines -- what sentence ought to apply considering but

9  not limited to the guidelines, before I can even start that

03:28:39   10  work, there has to be a presentence investigation.  You

11  will be interviewed as part of it.  There will be a

12  detailed report.  You will get a copy through Mr. Hilder.

13  The government will get a copy.  You will have a chance to

14  make objections.  There has to be a hearing then at which I

03:28:56   15  listen carefully to what you want to say and what

16  Mr. Hilder says.  I resolve the objections.  I figure out

17  what the guideline range is, and then I figure out the

18  appropriate sentence.  None of that work has yet been done.

19  Do you understand?

03:29:08   20           THE DEFENDANT:  Yes, ma'am.

21           THE COURT:  Standing here today, deciding

22  whether or not to plead guilty and sign this plea

23  agreement, you have got no assurance as to the sentence you

24  are going to get.  All you know for sure is the maximum

03:29:23   25  under the statute.  Do you understand that uncertainty?

1           THE DEFENDANT:  Yes, ma'am.

2           THE COURT:  If it turns out after we do all

3  this work that the sentence you get is higher than you

4  expect, you are stuck.  You cannot get out of your plea, to

03:29:42  5  start.  Do you understand that?

6           THE DEFENDANT:  Yes, ma'am.

7           THE COURT:  You can't change your mind.

8           THE DEFENDANT:  Yes, ma'am.

9           THE COURT:  And under this agreement, you

03:29:48  10  cannot file an appeal.  You cannot file a later challenge.

11  You are simply stuck.  The only exception would be if I

12  went higher than the statute permits.  Do you understand

13  that?

14           THE DEFENDANT:  Yes, ma'am.

03:30:04  15           THE COURT:  As long as I stay within the

16  statute, there is nothing you can do.  Even if I sentence

17  you more harshly than you expect, or even more harshly than

18  the government wants me to.  Do you understand that?

19           THE DEFENDANT:  Yes, ma'am.

03:30:21  20           THE COURT:  The government has said that it

21  agrees what guideline applies, therefore what range

22  applies; but again, I am not bound by the government's

23  agreement.  If I decide they're wrong on the law or wrong

24  on the facts and I impose or use a different guideline

03:30:55  25  range, and your sentence is higher as a result, there would

1  be nothing you could do about it, again, as long as I did

2  not go above the maximum.  Do you understand that?

3              THE DEFENDANT:  Yes, ma'am.

4              THE COURT:  And I'm just checking the agreement

03:31:15  5  on the waiver provision.  The government has agreed that it

6  would ask me for an adjustment to the guideline range to

7  make it lower to reflect that you have pleaded guilty and

8  accepted responsibility and saved the government the time

9  and trouble of trying you.  You understand that?

03:31:50  10             THE DEFENDANT:  Yes, ma'am.

11             THE COURT:  Again, if for some reason I find

12  that it is inappropriate to make the adjustment for

13  acceptance of responsibility, and I don't do it, and your

14  sentence is harsher as a result, there would be nothing you

03:32:08  15  could do about it.  Do you understand that?

16             THE DEFENDANT:  Yes, ma'am.

17             THE COURT:  The parties have agreed to the

18  money judgment that ought to be imposed, and we went

19  through some work to figure out what the maximum financial

03:32:22  20  exposure under the statute to you could be.  The fact that

21  there has been an agreement as to the money judgment

22  doesn't say anything about the amount of that judgment.  It

23  is merely an agreement that a money judgment can be

24  imposed.  So you do remain exposed --

03:32:42  25             THE DEFENDANT:  Yes, ma'am.

                KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

23

1          THE COURT:  -- to the full range of financial

2 penalties that I described.  You understand that?

3          THE DEFENDANT:  Yes, ma'am.

4          THE COURT:  And you understand that when it

03:32:50  5 comes to deciding the sentence that ought to be imposed, I

6 am not limited to the allegations in the superseding

7 indictment; I am not limited to what the government knows

8 about you today; I am not limited to what is proven in

9 court beyond a reasonable doubt.  I can rely, in

03:33:09 10 appropriate circumstances, on sufficiently reliable

11 information that's outside those categories in deciding

12 what sentence is appropriate.  And if that occurs, again,

13 and if it makes your sentence higher, there would be

14 nothing you could do about it.  Do you understand that?

03:33:27 15          THE DEFENDANT:  Yes, ma'am.

16          THE COURT:  There is also a forfeiture amount.

17 Does that cover any dollars that we haven't talked about?

18          MR. ELLERSICK:  No, Your Honor.

19          THE COURT:  All right.

03:34:04 20          MR. ELLERSICK:  Your Honor --

21          THE COURT:  Which accounts -- I'm sorry.  Go

22 ahead.

23          MR. ELLERSICK:  I'm sorry to interrupt, Your

24 Honor.  I was just going to make one correction and this is

03:34:10 25 because there is an inconsistency between the plea

1  agreement and the sentence data sheet that we just noticed.

2  The money laundering count has a maximum penalty of ten

3  years --

4             THE COURT:  Okay.

03:34:20  5             MR. ELLERSICK:  -- imprisonment and that's what

6  the plea agreement says.  The sentence data sheet

7  incorrectly says five years.

8             THE COURT:  So you are looking at 50 years max,

9  not 45.  You understand that?

03:34:29  10            THE DEFENDANT:  Yes, ma'am.

11            THE COURT:  All right.  Thank you for

12  clarifying.

13            MR. ELLERSICK:  Thank you, Your Honor.

14            THE COURT:  What I was going to say is that you

03:34:38  15  have also agreed that you will not challenge the fine in

16  any way, you understand that?

17            THE DEFENDANT:  Yes, ma'am.

18            THE COURT:  Either direct appeal or later?

19            THE DEFENDANT:  Yes, ma'am.

03:34:47  20            THE COURT:  Is there an agreement to dismiss

21  counts?

22            MR. ELLERSICK:  It is not explicitly set forth,

23  Your Honor, but it is certainly implied, and we make that

24  agreement here today.

03:35:02  25            THE COURT:  All right.

1          MR. ELLERSICK:  So we intend to dismiss the

2    remaining counts of the superseding indictment at the time

3    of sentencing.

4          THE COURT:  All right.  Mr. Posey, what you

03:35:09  5    need to understand about that, is that even though the

6    government has agreed to dismiss other counts that name you

7    besides 4, 8 and 22, under some circumstances I can take

8    into account the facts that are alleged in those counts in

9    determining your sentence.  And if that makes your sentence

03:35:27  10   heavier, again, as long as it is within the statutory

11   maximum, there would be nothing you could do about it.  Do

12   you understand that?

13         THE DEFENDANT:  Yes, ma'am.

14         THE COURT:  All right.  The only thing you

03:35:37  15   could do about it -- take it back -- would be to

16   potentially allege ineffective assistance of trial counsel.

17   But Mr. Hilder is a very effective lawyer, and you have

18   already told me how helpful he has been to you in this

19   case.  So, in effect, there would be nothing you could do

03:36:01  20   about it.  You understand?

21         THE DEFENDANT:  Yes, ma'am.

22         THE COURT:  All right.  I want you to turn in

23   particular to the part of the plea agreement that starts on

24   the bottom of page 10.  It's under paragraph numbered 14,

03:36:30  25   but, in fact, it covers a number of paragraphs under the

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

1   heading "Factual Basis for Guilty Plea," and it goes all

2   the way over to the middle of page 17.  See where I am

3   looking?

4               THE DEFENDANT:  Yes, ma'am.

03:36:43   5               THE COURT:  Did you and Mr. Hilder read these

6   sections with even greater care than you read the

7   indictment and the rest of the plea agreement?

8               THE DEFENDANT:  Yes, ma'am.

9               THE COURT:  All right.  Is everything that is

03:36:54   10   said about you in these seven pages under the heading

11   "Factual Basis" true and correct?

12               THE DEFENDANT:  Yes, ma'am.

13               THE COURT:  Is there anything about any

14   statement made in this section of your plea agreement that

03:37:09   15   you want to change, correct or modify in any way?

16               THE DEFENDANT:  No, ma'am.

17               THE COURT:  How do you plead, sir, to Counts 4,

18   8 and 22 of the superseding indictment?

19               THE DEFENDANT:  Guilty, ma'am.

03:37:26   20               THE COURT:  Is it your statement here in court

21   and under oath that every allegation against you in these

22   counts of the superseding indictment and every statement

23   about you in the factual basis for the guilty plea included

24   in the plea agreement are true and correct?

03:37:43   25               THE DEFENDANT:  Yes, ma'am.

1          THE COURT:  Are you making this guilty plea to

2  each of the three counts freely and voluntarily?

3          THE DEFENDANT:  Yes, ma'am.

4          THE COURT:  Has anybody forced you, or

03:37:50   5  threatened you, or coerced you, or done any harm to you or

6  anybody else to get you to plead guilty?

7          THE DEFENDANT:  No, ma'am.

8          THE COURT:  Are you pleading guilty because of

9  any promise made to you other than what's in writing in the

03:38:02   10  plea agreement and what's been stated here in open court

11  today?

12          THE DEFENDANT:  No, ma'am.

13          THE COURT:  Are you pleading guilty to protect

14  anyone else from prosecution?

03:38:09   15          THE DEFENDANT:  No, ma'am.

16          THE COURT:  Are you pleading guilty, Mr. Posey,

17  because you are guilty, and for no other reason?

18          THE DEFENDANT:  Yes, ma'am.

19          THE COURT:  You told me you read and understood

03:38:18   20  the plea agreement.  Are you ready to sign it under oath at

21  this time, if you have not already done so?

22          THE DEFENDANT:  Yes, ma'am.

23          THE COURT:  Do you have it there for him?

24          MR. HILDER:  Yes, Judge, we have it right here.

03:38:30   25          THE COURT:  Thank you.

1              While Mr. Posey is doing that, Mr. Hilder,

2 let me ask you if you know of any reason why Mr. Posey

3 should not plead guilty.

4              MR. HILDER:  No, Judge, I do not.

03:38:46    5              THE COURT:  Do you know of any meritorious

6 defense he would have?

7              MR. HILDER:  No, Judge, I do not.

8              THE COURT:  Do you know of any additional

9 admonishments he should receive that have not been given?

03:38:56    10              MR. HILDER:  No, Judge, I do not.

11              THE COURT:  Is the government aware of any?

12              MR. ELLERSICK:  No, Your Honor.

13              THE COURT:  Ms. Eddins.  He has signed, I

14 believe.

03:39:07    15              CASE MANAGER:  Has he signed?

16              MR. HILDER:  Yes.  We are just signing the

17 addendum right now.

18              THE COURT:  All right.  I would like Mr. Posey

19 to sign all the places he needs to sign.

03:39:33    20              Has the government signed as well?

21 (Document signed.)

22              CASE MANAGER:  Mr. Posey, if you will raise

23 your right hand, please.

24              Have you read or had read to you the plea

03:39:54    25 agreement you have just signed?

1                    THE DEFENDANT:  Yes, ma'am.

2                    CASE MANAGER:  Are the matters contained in

3 this agreement true and correct to the best of your

4 knowledge?

03:40:01  5                    THE DEFENDANT:  Yes, ma'am.

6                    CASE MANAGER:  Have you signed of your own free

7 will?

8                    THE DEFENDANT:  Yes, ma'am.

9                    CASE MANAGER:  Thank you.

03:40:05 10                    THE COURT:  Thank you.  Mr. Posey, these are

11 the Court's findings with respect to your plea.

12                         As earlier stated, you are clearly

13 mentally competent and capable of entering a knowing,

14 voluntary and informed plea.  I now find that the plea is

03:40:18 15 supported by independent facts that establish all the

16 elements of the offense and the three counts to which you

17 have pleaded guilty and that you intended to do the acts

18 alleged in those counts.

19                         I find that your plea of guilty is

03:40:31 20 voluntarily, freely and knowingly made, that you understand

21 the nature of these proceedings and the consequences of

22 pleading guilty, and that you have made an informed plea.

23 I accept your guilty plea, Mr. Posey, and I find you guilty

24 as charged in Counts 4, 8 and 22 of the superseding

03:40:52 25 indictment.

                    KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

1                    There will now be the presentence

2    investigation that I described to you.  As part of it you

3    will be interviewed.  Mr. Hilder may be present in that

4    interview if you want him to be.

03:41:05    5                    The report that will be provided and -- to

6    me, and to all counsel, will be provided in advance of a

7    deadline for you, through Mr. Hilder, to make any

8    objections that you think should be presented.  And on

9    March 29, at 9:00 a.m., a hearing will be held for

03:41:24   10   sentencing, and at that hearing you will be able to make

11   any statement and Mr. Hilder will be able to make any

12   statement that you wish on your behalf.  Do you understand?

13                    THE DEFENDANT:  Yes, ma'am.

14                    THE COURT:  Are the conditions of bond to

03:41:36   15   remain in place?

16                    MR. ELLERSICK:  Yes, Your Honor.

17                    THE COURT:  All right.  So ordered.  Anything

18   further for today?

19                    MR. HILDER:  No, Judge.

03:41:44   20                    MR. ELLERSICK:  No.  Thank you.

21                    THE DEFENDANT:  Thank you.

22                    MR. HILDER:  May we be dismissed?

23                    THE COURT:  You may.

24                    MR. HILDER:  Thank you.

25   (Concluded at 3:41 p.m.)

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

1                    COURT REPORTER'S CERTIFICATE

2

3        I, Kathleen K. Miller, certify that the foregoing is a

4   correct transcript from the record of proceedings in the

5   above-entitled matter.

6

7                                    /s/_____
    DATE: Dec. 20, 2017         Kathleen K. Miller, RPR, RMR, CRR
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25