IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS

Houston Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 4:17-cr-116-2 |
| | ) | |
| STEPHEN E. STOCKMAN, | ) | The Honorable Lee H. Rosenthal |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' MOTION *IN LIMINE* TO EXCLUDE
IMPROPER EXPERT TESTIMONY**

In the federal judicial system, "[e]ach courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards." *Burkhart v. Wash. Metro. Area Transp. Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997). The defendant has nonetheless notified the United States of his intention to offer at trial the expert testimony of two criminal defense attorneys regarding a wide array of legal issues, among other impermissible matters. This proffered testimony is wholly improper and should be excluded.

**BACKGROUND**

On February 7, 2018, counsel for the defendant emailed to the United States a notice of the defendant's intent to call as expert witnesses David A. Warrington and Sidney Powell, two attorneys whose areas of practice include white-collar criminal defense. This notice is attached to this motion as Exhibit A. On February 12, 2018, the defendant supplemented his expert notice via email, providing additional information regarding the expected testimony of Mr. Warrington

1

and Ms. Powell. The defendant's supplemental expert notice is attached to this motion as Exhibit B.

According to the defendant's expert notices, Mr. Warrington is a licensed and practicing attorney who will address "Federal Election Law" and whose testimony "will address, among other things, lawful and accepted practices in fundraising by nonprofit organizations, lawful and accepted practices in expenditures by nonprofit organizations, and lawful and accepted campaigning practices of candidates for federal political office." The expert notices state that the basis and reasons for Mr. Warrington's opinions will be "his knowledge and experience in these areas of law and regulation," and "may include his examination of particular transactions in this case."[1] The expert notices do not further describe what "practices" Mr. Warrington believes are "lawful and accepted" or his opinions regarding any "particular transactions" in this case.

Furthermore, according to the expert notices, Ms. Powell is a licensed and practicing attorney who will address "Federal Election Law" and whose testimony "will address, among other things, an overview of general investigative techniques used by the government when interviewing prospective government witnesses and preparing said witnesses to testify, and lawful and accepted campaigning practices of candidates for federal political office." Ms. Powell is also expected to testify regarding the "Benefits Offered to Cooperating Defendants in Return for Desired Testimony, Methods Applied to Induce Such Testimony, and Risks Thereof." The defendant's expert notices state that the basis and reasons for Ms. Powell's opinions will be

---

[1] During the course of this investigation, Mr. Warrington previously represented Saber Communications, Inc., a Virginia-based company that received more than $5,000 of the funds fraudulently acquired by the defendant in 2012 in exchange for services associated with the distribution of hundreds of thousands of fundraising emails for the defendant's congressional campaign. Mr. Warrington appears to have moved to a different law firm, and the United States is unaware whether Mr. Warrington continues to represent Saber Communications.

"her knowledge and experience in these areas of law, regulation, policy, and practice," and "may include her examination of particular transactions in this case." The expert notices do not further describe the "general investigative techniques" purportedly used by the government, the "campaigning practices" that Ms. Powell considers "lawful and accepted," or her opinions regarding any "particular transactions" in this case.

## ARGUMENT

The proffered testimony of Mr. Warrington and Ms. Powell should be excluded, because it would consist of impermissible legal conclusions that would serve to confuse the jury, does not rest upon a reliable methodology that can be objectively analyzed, and is otherwise irrelevant to the issues properly in dispute at trial.

### I.    Legal Standard

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) The testimony is based on sufficient facts or data;
> (c) The testimony is the product of reliable principles and methods; and
> (d) The expert has reliably applied the principles and methods to the facts of the case.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court observed that Rule 702 envisioned a "flexible" inquiry focusing "solely on principles and methodology, not on the conclusions that they generate." *Id.* at 594-95. The basic question under *Daubert* is "whether the expert is proposing to testify to (1) scientific knowledge that (2)

will assist the trier of fact to understand or determine a fact in issue" — in other words, whether the expert's testimony "both rests on a reliable foundation and is relevant to the task at hand." *See id.* at 592. 597; *see also Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (per curiam) ("In *Daubert*, the Supreme Court explained that Rule 702 assigns to the district judge a gatekeeping role to ensure that scientific testimony is both reliable and relevant.") (internal quotation marks omitted). The twin requirements of reliability and relevance are applicable to all expert witnesses, not just scientific ones. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

First, "[t]he proponent of expert testimony . . . has the burden of showing that the testimony is reliable." *United States v. Hicks*, 389 F.3d 514, 525 (5th Cir. 2004). The Fifth Circuit has observed that "[t]o establish reliability under *Daubert*, an expert bears the burden of furnishing some objective, independent validation of [his] methodology." *Brown v. Ill. Cent. R.R. Co.*, 705 F.3d 531, 536 (5th Cir. 2013) (internal quotation marks omitted) (second alteration in original). "Many factors bear on the inquiry into the reliability of scientific and other expert testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002). The Supreme Court provided an illustrative, though not mandatory, list of factors that may be considered in the reliability analysis in *Daubert*, including factors such as testing, peer review and publication, error rates, and acceptability of the witness's methodology by others in the field. *See Kumho*, 526 U.S. at 141-42. Regardless of the factors considered in the reliability analysis, however, it is ultimately "[t]he district court's responsibility . . . 'to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'"

4

*Pipitone*, 288 F.3d at 244 (quoting *Kumho*, 526 U.S. at 152). An expert's mere "assurances that he has utilized generally accepted [principles] is insufficient" to establish reliability. *Brown*, 705 F.3d at 536 (internal quotation marks omitted) (alteration in original); *see also Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007) ("[T]he existence of sufficient facts and a reliable methodology is in all instances mandatory. [W]ithout more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible.") (internal quotation marks omitted) (second alteration in original). An expert's testimony "must be reliable at each and every step," including "the methodology, the facts underlying the expert's opinion, [and] the link between the facts and the conclusion." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007).

Second, the proponent of testimony must show that the proffered expert testimony is relevant, that is, that "the expert's reasoning or methodology can be properly applied to the facts in issue." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (internal quotation marks omitted). The expert testimony must "assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592. In other words, expert testimony must "bring to the jury more than the lawyers can offer in argument." *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992). Expert testimony is also subject to Federal Rule of Evidence 403, which permits the exclusion of evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." *See Daubert*, 509 U.S. at 595.

    II.    <u>The defendant's proposed expert testimony would consist of impermissible legal opinions and would invade the province of the Court to decide the law.</u>

It is a fundamental precept that expert testimony on the meaning and applicability of the law is inadmissible. Put simply, "an expert may never render conclusions of law." *Goodman v.*

5

*Harris Cty.*, 571 F.3d 388, 399 (5th Cir. 2009). This is because "there is one, but only one, legal answer for every cognizable dispute," and "[t]here being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who is of course the judge." *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997). Indeed, as the Fifth Circuit has recognized, "allowing attorneys to testify to matters of law would be harmful to the jury," because "the jury would be very susceptible to adopting the expert's conclusion rather [than] making its own decision." *See id.* ("There is a certain mystique about the word 'expert' and once the jury hears of the attorney's experience and expertise, it might think the witness even more reliable than the judge."). In addition, if experts were "allowed to testify to legal questions, each party would find an expert who would state the law in the light most favorable to its position," and "[s]uch differing opinions as to what the law is would only confuse the jury." *Id.*; *see also Brown*, 705 F.3d at 537 & n.18 (affirming the exclusion of "transparently subjective" expert testimony that included "plainly inadmissible legal opinions," including an analysis of federal regulations); *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983) (noting that "allowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant").[2]

Similarly, a party may not introduce an expert's opinion regarding whether the party complied with relevant law, including in the form of hypothetical questions. In *Estate of Sowell v. United States*, 198 F.3d 169 (5th Cir. 1999), the court affirmed the exclusion of expert

---

[2] Such impermissible expert testimony regarding legal opinions or conclusions is distinct from expert testimony regarding questions of *fact*, which can be a subject of permissible testimony. *See, e.g.*, *Askanase*, 130 F.3d at 672 (noting that "merely being a lawyer does not disqualify one as an expert witness," and that "[l]awyers may testify as to legal matters when those matters involve questions of fact," but upholding the exclusion of expert testimony regarding whether the defendants breached their fiduciary duties).

6

testimony regarding what a reasonable estate executor would do in hypothetical situations identical to the facts underlying the case. The Fifth Circuit concluded that the proffered testimony was inadmissible because the expert would have simply "espouse[d] his opinion on the facts of the case." *See id.* at 171-72. Such testimony would constitute a legal opinion that would "implicate the same concerns" involving dueling legal experts. *See id.* at 172; *see also Snap-Drape, Inc. v. Comm'r of Internal Revenue*, 98 F.3d 194, 198 (5th Cir. 1996) (affirming the exclusion of expert witness reports that "consist[ed] of nothing more than legal arguments").

Consistent with Fifth Circuit precedent, this Court has repeatedly excluded expert testimony regarding legal opinions or conclusions. *See, e.g.*, *Fisher v. Halliburton*, Order, Civil Nos. H-05-1737, H-06-1971, H-06-1168, 2009 WL 5216979, at *2 (S.D. Tex. Dec. 21, 2009) ("First, experts cannot assert what law governs an issue or what the applicable law means because that is a function of the court. . . . Expert testimony is an improper mechanism for offering legal arguments to the [c]ourt . . . [because it] would be unfair to [one party] for the [c]ourt to award [the opposing party]'s legal arguments the elevated stamp of expert.") (internal quotation marks omitted) (alterations and omissions in original); *Floyd v. Hefner*, 556 F. Supp. 2d 617, 640 (S.D. Tex. 2008) ("An expert witness may not offer testimony regarding legal conclusions."); *Morris v. Equifax Info. Servs., LLC*, Order, Civil No. H-04-423, 2005 WL 5976334, at *2 (S.D. Tex. Jan. 19, 2005) ("Legal opinions and conclusions are not a proper subject of expert testimony because they do not assist the jury in understanding the evidence, but merely tell the jury what result to reach. Lawyer experts cannot opine as to what law governs an issue or what the applicable law means because that function belongs to the Court.") (internal citation omitted). *See generally In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 64

(S.D.N.Y. 2001) ("[E]very circuit has explicitly held that experts may not invade the court's province by testifying on issues of law.").

The defendant's expert notices are replete with references to such impermissible legal opinions and conclusions. Mr. Warrington and Ms. Powell have both been noticed as experts on "Federal Election Law" and "lawful and accepted campaigning practices of candidates for federal political office." Mr. Warrington has also been noticed as an expert on "lawful and accepted practices in fundraising by nonprofit organizations" and "lawful and accepted practices in expenditures by nonprofit organizations." The defendant's expert notices also indicate that their testimony "may include" their "examination of particular transactions in this case" — precisely the sort of fact-specific expert legal opinion that the Fifth Circuit has repeatedly rejected. *See, e.g.*, *Estate of Sowell*, 198 F.3d at 171-72; *Owen*, 698 F.2d at 240. The court should prohibit the defendant from introducing these plainly improper legal opinions and conclusions through his proposed experts at trial.

### III. The defendant has failed to establish the reliability or relevance of his proposed expert testimony.

The proposed expert testimony should be excluded for the additional reason that the defendant's expert notices have failed to establish the reliability of the proposed expert testimony or its relevance to this case. As noted above, "[t]o establish reliability under *Daubert*, an expert bears the burden of furnishing some objective, independent validation of [his] methodology." *Brown*, 705 F.3d at 536 (internal quotation marks omitted) (second alteration in original). Yet the expert notices proffered by the defendant describe no facts, data, principles, or methods underlying their opinions at all. The proffered testimony instead appears to consist simply of the experts' subjective opinions regarding what campaign and fundraising practices are "lawful" and

8

"accepted." More than this bare-bones recitation is required in order to establish reliability under *Daubert*. *See, e.g., Brown*, 705 F.3d at 536 ("The expert's assurance that he has utilized generally accepted [principles] is insufficient.") (internal quotation marks omitted) (alteration in original); *Kumho*, 526 U.S. at 157 (noting that the district court is not required to "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert"); *see also* Fed. R. Evid. 702 advisory committee's note to 2000 amendments ("The trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted. The expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded.").

The defendant has also failed to establish the relevance of the proffered expert testimony. The defendant's expert notices fail to describe with any particularity the sorts of campaign and fundraising "practices" that the proposed experts consider "lawful" and "accepted." It is therefore impossible to tell from the defendant's expert notices whether the proposed testimony has anything to do with the facts at issue in this case, or how such testimony would be helpful to the jury. The fact that the expert witnesses are attorneys who would opine on legal matters also renders their testimony confusing and irrelevant, since it is the Court's responsibility alone to provide the jury with instructions on the law. To the extent that the defendant wishes to convey legal opinions to the jury, he must do so through the Court, not criminal defense attorneys moonlighting as expert witnesses.

For these reasons, the defendant has failed to establish the reliability or relevance of the proposed expert testimony, and such testimony should be excluded. Alternatively, the Court

should conduct a *Daubert* hearing prior to trial at which the defendant's proposed experts are required to explain their qualifications, methodologies, and opinions in greater detail.

      IV.    <u>The proposed testimony of Ms. Powell regarding general investigative techniques and cooperating defendant credibility is improper and should be precluded.</u>

Finally, the Court should exclude the proposed testimony of Ms. Powell concerning the credibility of government witnesses. The defendant's expert notices indicate that Ms. Powell would testify regarding "Benefits Offered to Cooperating Defendants in Return for Desired Testimony, Methods Applied to Induce Such Testimony, and Risks Thereof." Ms. Powell would also address, "among other things, an overview of general investigative techniques used by the government when interviewing prospective government witnesses and preparing said witnesses to testify." Such testimony would amount to impermissible expert commentary on the credibility of government witnesses, and would in any event be irrelevant, confusing, and unhelpful to the trier of fact.

It is black-letter law that "[i]t is the sole province of the jury . . . to weigh conflicting evidence and evaluate the credibility of witnesses." *United States v. Green*, 180 F.3d 216, 220 (5th Cir. 1999) (internal quotation marks omitted) (alteration in original). This principle applies to the testimony of all witnesses, including co-conspirators. *See, e.g., United States v. Velasquez*, --- F.3d ----, 2018 WL 616151, at *6 (5th Cir. 2018) (per curiam) ("The jury retains the sole authority to weigh any conflicting evidence and to evaluate the credibility of the witnesses.") (internal quotation marks omitted).

A party may not invade the jury's exclusive province by offering the testimony of purported experts opining on the veracity of witnesses. "The Fifth Circuit and several lower courts have made clear that expert testimony may not usurp the factfinder's inherent authority to

10

make credibility determinations." *In the Matter of M&M Wireline & Offshore Servs., LLC*, Order, Civil No. 15-4999, 2016 WL 4681196, at *2 (E.D. La. Sept. 7, 2016) (excluding expert testimony regarding "the relative credibility and veracity of" witnesses); *see Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 618 (5th Cir. 1999) (in relation to a challenge to expert testimony, noting that "[c]redibility determinations, of course, fall within the jury's province"); *Charalambopoulos v. Grammer*, Mem. Opinion and Order, No. 3:14-cv-2424, 2017 WL 930819, at *17 (N.D. Tex. Mar. 8, 2017) ("It is clearly established that expert testimony may not usurp the jury's authority to make credibility determinations."); *Amin-Akbari v. City of Austin*, 52 F. Supp. 3d 830, 848 (W.D. Tex. 2014) ("It is for the jury to assess credibility, not an expert."); *Henson v. Odyssea Vessels, Inc.*, Order and Reasons, Civil No. 07-613, 2008 WL 449726, at *2 (E.D. La. Feb. 15, 2008) ("Plaintiff is certainly correct that determining the credibility of witnesses is the province of a jury.").

Ms. Powell's proposed expert testimony should be excluded because it would constitute just such impermissible commentary on the credibility of witnesses. Although the defendant's expert notices are slim on details, he apparently intends to ask Ms. Powell to opine on "benefits" generally offered to cooperating defendants, ostensibly in return for "desired" testimony, and the purported "risks thereof." Presumably, Ms. Powell views the testimony of cooperating defendants as generally unreliable. But it is for the jury, not Ms. Powell, to opine on the credibility of witnesses in light of the facts and evidence in this case. And it is for the Court, not Ms. Powell, to caution the jurors regarding the nature of co-conspirator testimony and the proper manner of weighing witness credibility. *See, e.g.*, Fifth Circuit Criminal Pattern Jury Instructions § 1.15 (2015) (explaining that plea bargaining "has been approved as lawful and

proper," that "the testimony of such a witness may alone be of sufficient weight to sustain a verdict of guilty," and that such testimony "is always to be received with caution and weighed with great care").

Ms. Powell's generalized assessment of practices in *other* cases should also be excluded for the additional reason that it would be irrelevant, confusing, and unhelpful to the jury. The facts relevant to the credibility of the defendant's co-conspirators *in this case* will be established and fully vetted at trial, including through cross-examination by the defendant regarding their plea agreements, their interactions with the government, and the potential sentences they face. The defendant has offered no explanation why this traditional method of scrutinizing the credibility of co-conspirator testimony would be insufficient in this case. Testimony regarding other witnesses in other cases would serve only to confuse the issues and distract the jury from the credibility determinations that are relevant in the case at hand.[3]

Numerous courts have excluded testimony similar to the proffered testimony of Ms. Powell. In *United States v. Allen*, 716 F.3d 98, 105-06 (4th Cir. 2013), the Fourth Circuit

---

[3] The government is also concerned that the defendant may attempt to use Ms. Powell's testimony to suggest to the jury that this case is the result of vindictive or selective prosecution — an area of inquiry that the Court has already ruled is improper for the defendant to raise before the jury, and one that the defendant has offered no evidence to support. Ms. Powell has frequently written and spoken about what she views as "overzealous, unethical, or even malicious federal prosecutors" and their purported "abuse of power." *See, e.g.*, Sidney Powell, "Dispatch from CPAC: Overzealous Prosecutors Must Be Stopped," Observer, Feb. 27, 2017, *available at* http://observer.com/2017/02/conservatives-criminal-justice-reform-cpac/. Ms. Powell also appears to be currently marketing a book, "Licensed to Lie: Exposing Corruption in the Department of Justice," which purportedly "reveals the strong-arm, illegal, and unethical tactics used by headline-grabbing federal prosecutors in their narcissistic pursuit of power to the highest halls of our government." *See* http://licensedtolie.com/. The defendant should not be permitted to evade the prohibition on jury arguments regarding vindictive or selective prosecution by raising baseless claims of improper prosecutorial motivation through expert testimony.

12

affirmed the exclusion of the expert testimony of a criminal defense attorney regarding "the legal significance of § 5K1.1 letters, § 3553(e) motions, and 21 U.S.C. § 851 notices" in order to show that "the codefendants called to testify against him may be biased." The court concluded that "[e]xpert testimony of this nature is not permitted under the Federal Rules of Evidence," and that "[a] juror can connect the dots and understand the implications that a plea agreement might have on a codefendant's testimony" without the assistance of an expert. *Id.* (internal quotation marks omitted); *see also United States v. Ancrum*, 161 F. App'x 258, 259 (4th Cir. 2006) (affirming exclusion of expert testimony regarding the incentives that may have affected the testimony of codefendants, noting that "[p]roviding unreliable testimony in exchange for a lesser sentence is a topic which is within the common knowledge of the jurors" and that "this type of credibility determination is within the sole province of the jury") (internal quotation marks omitted).

Similarly, in *United States v. Davis*, 457 F.3d 817, 824 (8th Cir. 2006), the Eighth Circuit affirmed the exclusion of expert testimony by a federal public defender regarding "substantial assistance and the mechanics of the federal sentencing process," which was offered in order to "impeach the credibility of the government's cooperating witnesses, calling into question their motivation for testifying against Davis, and thereby raising doubt as to the reliability of their testimony." The court observed that the cooperating witnesses at issue were examined regarding their plea agreements and potential sentences, and that "[t]he jury did not need expert testimony explaining the details of sentencing procedures to understand that the government's witnesses might have an incentive to incriminate Davis." *Id.* Noting that the district court had provided the jury with an instruction regarding substantial assistance and the weighing of cooperator credibility, the Eighth Circuit concluded that "[t]his instruction, coupled with defense counsel's

13

own arguments, sufficiently communicated to the jury the information it needed to assess the incentives government witnesses had to stretch or shade the truth in order to obtain sentence reductions." *Id.* (internal quotation marks omitted); *see also United States v. French*, 12 F.3d 114, 116-17 (8th Cir. 1993) (affirming exclusion of testimony by criminal defense attorney about "the impact on witness credibility of the substantial-assistance reductions available under the Sentencing Guidelines," noting that this was a matter "clearly within the realm of common sense" and that the "credibility of witnesses is a determination for the factfinder (in this case the jury) to make"); *United States v. Johnson*, 297 F.3d 845, 861-62 (9th Cir. 2002).

In another similar case, *United States v. Noze*, 255 F. Supp. 3d 352 (D. Conn.), the district court excluded proposed expert testimony by a law professor regarding "the incentives and the benefits cooperating witnesses receive for testifying" and "research and studies concerning the credibility in general of informants." The court concluded that "the Federal Rules of Evidence do not allow one party to call an expert to opine about the tendencies or incentives of the other party's fact witnesses to lie or not to lie. It is for the jury to decide if witnesses are lying." *Id.* at 353-54. The court noted that the cooperating witnesses at issue would be subject to cross-examination and that the court would provide the jury with an instruction concerning the weighing of cooperator credibility. *Id.* at 354. The court also warned of the likely consequences of the proposed expert testimony:

> If criminal defendants are free to enlist law professors to assail the truthfulness of cooperating witnesses, it is hard to understand why prosecutors should not have an equal right to call their own rebuttal experts. Prosecutors could no doubt find expert law enforcement professionals to attest how often the information received from cooperating witnesses turns out in hindsight to be entirely true . . . and no less vital to the solving of serious crimes. It would not be long before criminal trials would devolve from a focus on the actual evidence to battles of road-show experts for the defense and the prosecution about the tendencies and truthfulness of cooperating witnesses.

*Id.* at 355; *see also United States v. Ervin*, Order, No. CR 14-04, 2014 WL 2993750, at *1 (D. Mont. July 2, 2014) (excluding proposed expert testimony by a former federal prosecutor concerning "[t]he practice of prosecutors offering incentives to individuals who agree to testify in criminal cases," noting that "[t]hese concepts are well within the common knowledge and understanding of the average juror, and expert testimony is therefore inappropriate under Rule 702, and irrelevant under Rule 401").

Likewise here, the defendant's co-conspirators will be subject to cross-examination and impeachment on the basis of any incentives provided by the government, and the Court will instruct the jury regarding the evaluation of cooperator credibility. These matters are well within the common-sense understanding of the jury. Because Ms. Powell's testimony regarding general investigative techniques and cooperator credibility would serve no purpose except to confuse the issues and distract the jury from the facts at hand, it should be excluded.

## CONCLUSION

For the foregoing reasons, the Court should exclude the defendant's proposed expert testimony.

Dated: February 16, 2018

Respectfully submitted,

RYAN K. PATRICK
United States Attorney

ANNALOU TIROL
Acting Chief, Public Integrity Section

Melissa Annis
Assistant United States Attorney

Ryan J. Ellersick
Robert J. Heberle
Trial Attorneys

  /s/ *Robert J. Heberle*
Robert J. Heberle
Trial Attorney
Public Integrity Section
Criminal Division
United States Department of Justice
1400 New York Avenue NW
Washington, DC 20530
Telephone: (202) 514-1412
E-mail: robert.heberle@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on February 16, 2018, I filed the foregoing document with the Clerk of Court using the CM/ECF system, which will cause a true and accurate copy to be sent to counsel of record for defendant Stockman.

/s/ *Robert J. Heberle*
Robert J. Heberle

## CERTIFICATE OF CONFERENCE

Counsel for defendant Stockman was contacted on February 15, 2018, to obtain counsel's position on the government's motion. Counsel stated that he is opposed to the motion.

/s/ *Robert J. Heberle*
Robert J. Heberle