IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 4:17-cr-116-2 |
| v. | ) | |
| | ) | The Honorable Lee H. Rosenthal |
| STEPHEN E. STOCKMAN, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' OPPOSED MOTION FOR AN
ORDER IMPOSING MONEY JUDGMENT**

The United States of America, by and through undersigned counsel, moves for the entry of

an order imposing a personal money judgment of $1,250,571.65 against the defendant, Stephen E.

Stockman.

**BACKGROUND**

In the First Superseding Indictment ("indictment"), the United States provided notice to

the defendant that under 28 U.S.C. § 2461(c) and 18 U.S.C. § 981(a)(1)(C), in the event of

conviction of any of the mail and wire fraud offenses charged in Counts One through Eight of the

indictment, the United States would seek to forfeit all property, real or personal, which constitutes

or is derived from proceeds traceable to such offense.  The indictment also notified the defendant

that under 18 U.S.C. § 982(a)(1), in the event of conviction of any of the money laundering

offenses charged in Counts Fourteen through Twenty-Seven of the indictment, the United States

would seek to forfeit all property, real or personal, involved in money laundering offenses or

traceable to such property.  The United States also provided notice in the First Superseding

Indictment that it would seek a money judgment against the defendant.  (*See* First Superseding

Indictment, R. Doc. 23, at 44-45).

On April 12, 2018, a jury found the defendant guilty of twenty-three Counts charged in the indictment.  (*See* Verdict Form. R. Doc. 211).  Specifically, the jury convicted the defendant of:

- Counts One through Four of the indictment, charging the defendant with mail fraud in violation of 18 U.S.C. § 1341;

- Counts Five, Seven, and Eight of the indictment, charging the defendant with wire fraud in violation of 18 U.S.C. § 1343;

- Count Nine of the indictment, charging the defendant with conspiracy to make conduit campaign contributions and false statements in violation of 18 U.S.C. § 371;

- Counts Ten and Eleven of the indictment, charging the defendant with making false statements in violation of 18 U.S.C. § 1001(a)(2);

- Count Twelve of the indictment, charging the defendant with making an excessive campaign contribution in violation of 52 U.S.C. §§ 30116(a)(1)(A), 30116(a)(7)(B)(i), and 30109(d)(1)(A)(i);

- Counts Fourteen through Twenty-Two and Twenty-Four of the indictment, charging the defendant with money laundering in violation of 18 U.S.C. § 1957;

- Count Twenty-Seven of the indictment, charging the defendant with money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i); and

- Count Twenty-Eight of the indictment, charging the defendant with filing a false tax return in violation of 26 U.S.C. § 7206(1).

## ARGUMENT

Federal Rule of Criminal Procedure 32.2(b)(1)(A) provides that "[i]f the government seeks a personal money judgment, the court must determine the amount of money that the defendant will

be ordered to pay" and should do so "[a]s soon as practical" after a finding of guilt.  The Court's

forfeiture determination "may be based on evidence already in the record."  Fed. R. Crim. P.

32.2(b)(1)(B).    The evidence in the record in this case supports a money judgment for

$1,250,571.65 against the defendant and in favor of the United States.

I.        Legal Standard

The Supreme Court has stated that "Congress could not have chosen stronger words to

express its intent that forfeiture be mandatory in cases where the statute applied, or broader words

to define the scope of what was to be forfeited."  *United States v. Monsanto*, 491 U.S. 600, 607

(1989) (interpreting similar forfeiture statute, 21 U.S.C. § 853(a)).  Forfeiture is mandatory in any

criminal case in which forfeiture is authorized by statute.  *See* 28 U.S.C. § 2461(c) (providing that

if a defendant is convicted of an offense giving rise to forfeiture, "the court shall order the forfeiture

of the property").

The Fifth Circuit Court of Appeals has endorsed the imposition of personal money

judgments.  *United States v. Olguin*, 643 F.3d 384, 397 (5th Cir. 2011) ("We join our sister circuits

and hold that money judgments are appropriate in the criminal forfeiture context," quoting *United*

*States v. Day*, 524 F.3d 1361, 1378 (D.C. Cir. 2008)).  A money judgment may be imposed against

a defendant in the amount of proceeds that the defendant acquired or obtained as a result of a

criminal offense.  *Honeycutt v. United States*, 581 U.S. ___, 137 S. Ct. 1626 (2017).

Here, the defendant is subject to a forfeiture money judgment for two reasons.  First, the

defendant has been convicted of seven counts of mail and wire fraud, in violation of 18 U.S.C.

§§ 1341 and 1343.  Violations of the mail and wire fraud statutes constitute "specified unlawful

activity" within the meaning of 18 U.S.C §§ 1956(c)(7) and 1961(1), and the proceeds of such

violations are therefore subject to criminal forfeiture under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

Second, the defendant has been convicted of eleven counts of money laundering in violation of 18 U.S.C. §§ 1957 and 1956(a)(1)(B)(i).  Under 18 U.S.C. § 982(a)(1), in any case involving violations of §§ 1957 and 1956, the court "shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property."  As the Fifth Circuit has recognized, money laundering convictions also give rise to money judgments.  *See United States v. Cessa*, 872 F.3d 267, 273-74 (5th Cir. 2017) (affirming money judgment in money laundering conspiracy case).

Under both of these theories of forfeiture, this Court determines the proper amount of the money judgment.[1]  Forfeiture matters are determined under a preponderance of the evidence standard.  *See United States v. Gasanova*, 332 F.3d 297, 300-301 (5th Cir. 2003). The criminal rules provide that the Court's forfeiture determination "may be based on evidence already in the record . . . and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable."  Fed. R. Crim. P. 32.2(b)(1)(B).  Here, this Court presided over the jury trial and heard the trial evidence, including evidence of the defendant's participation in and direction of the fraud scheme and evidence of the amount of money that the defendant obtained or acquired, as outlined below.

---

[1] A defendant may elect to retain a jury only as to whether the government has proven the requisite nexus between a defendant's criminal offenses and a *specific* property the government seeks to forfeit. *See* Fed. R. Crim. P. 32.2(b)(1)(A) ("If the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay."); *see also United States v. Tedder*, 403 F.3d 836, 841 (7th Cir. 2005) (Rule 32.2 "does not entitle the accused to a jury's decision on the amount of the forfeiture").

II.      Evidence of the Amount of Proceeds

In this case, the Court should impose a personal money judgment representing the amount of money obtained by the defendant   As described below, the trial evidence established that the total proceeds of the defendant's fraud scheme were $1,250,571.65.

The evidence at trial demonstrated that the defendant orchestrated a sophisticated scheme to defraud charitable donors of hundreds of thousands of dollars through materially false representations, then laundered the proceeds through a web of sham charities and nonprofit organizations to pay for personal and campaign expenses, and conspired to violate campaign finance laws and to cause false statements to be made to the Federal Election Commission ("FEC"), all without paying a penny of taxes on his fraudulent income.  In each of four different years, the defendant obtained hundreds of thousands of dollars through this scheme, which he then illegally used to finance personal and campaign expenses.

First, the trial evidence established that in 2010, the defendant fraudulently solicited $285,000 in charitable donations from Stanford Z. Rothschild Jr., an elderly director of multiple charitable foundations, to a purported nonprofit entity named the Ross Center.  (Gov't Exs. 2010-2a, 2010-2n, 2010-2bb, 2010-2nn).  The defendant caused materially false representations to be made to Mr. Rothschild that the money would be used for legitimate voter education activities in specified geographical areas in advance of the November 2010 elections.  In fact, virtually none of the money donated by Mr. Rothschild's charitable foundation was used to fund such voter education activities.  Instead, beginning almost immediately after the money was donated to the Ross Center, the defendant used Mr. Rothschild's charitable donations to pay for a wide variety of personal expenditures that had nothing to do with voter education, including medical care, dry

cleaning, tanning sessions, nail salons, utilities, cell phone bills, groceries, pet supplies, retail shopping, trips to amusement parks, a ride in a hot air balloon, and a trip to South Sudan to attempt to solicit millions of dollars in lobbying fees. (Gov't Exs. 2010-1b, 2010-1c, 2010-1d, 2010-1e, 2010-1f, 2010-1g, 2010-1g-1, 2010-1h, 2010-1i, 2010-1j, 2010-1k).

Second, in late 2011 and 2012, the defendant fraudulently solicited another $165,000 in charitable donations from Mr. Rothschild's charitable foundations to the Ross Center and another sham nonprofit named Life Without Limits. (Gov't Exs. 2012-1a, 2012-2a, 2012-3a, 2012-4a). As shown at trial, after Mr. Rothschild specifically refused to give the defendant a loan to be used to fund the defendant's congressional campaign, the defendant asked Mr. Rothschild for charitable donations that he falsely represented would be used to fund voter education activities in the defendant's congressional district. In fact, contrary to the representations he made to Mr. Rothschild, the defendant transferred more than $83,000 of these charitable donations directly into his campaign's bank account, where the money was used for campaign expenses. (Gov't Exs. 2012-4b, 2012-4g). The defendant transferred the remainder of Mr. Rothschild's charitable donations into other bank accounts, where he used it to pay for a variety of personal and campaign expenses. (Gov't Exs. 2012-1b, 2012-1c, 2012-1d, 2012-2b, 2012-2c, 2012-2d, 2012-2e, 2012-3b, 2012-3c, 2012-3d, 2012-3e, 2012-4c, 2012-4d, 2012-4e, 2012-4f).

Third, in January 2013, the defendant solicited a $350,000 charitable donation from a charitable foundation run by Richard Uihlein to Life Without Limits, ostensibly for the purpose of funding the "Freedom House," a townhouse in Washington, D.C., that would serve as a meeting place, dormitory, and training facility for young people. (Gov't Exs. 2013-2d, 2013-2g). Despite these misrepresentations to Mr. Uihlein, the defendant did not use any of this $350,000 donation

to fund the Freedom House.  Instead, the defendant diverted the charitable funds to pay for a wide

variety of personal and campaign expenditures benefitting the defendant, including to finance an

illegal coordinated expenditure supporting the defendant's candidacy for U.S. Senate in 2014, to

conduct covert surveillance of a Texas state representative whom the defendant viewed as a

political threat, and to benefit the defendant's family and associates.  (Gov't Exs. 2013-1a, 2013-

1b, 2013-1c, 2013-1d).  The defendant also routed $15,000 of Mr. Uihlein's charitable donation to

the defendant's congressional campaign by using his two co-defendants, Thomas Dodd and Jason

Posey, as conduits.  (Gov't Ex. 2013-3a).  The defendant caused his campaign to file false FEC

reports that misstated the source of these campaign contributions.  (Gov't Exs. 2013-3t, 2013-3v,

2013-3y).  He also caused Mr. Posey to send a letter to Mr. Uihlein falsely stating that the $350,000

charitable donation had been used to support the Freedom House and to deliver medical supplies

to third world nations.  (Gov't Ex. 2013-2j).

Fourth, in 2014, as the defendant campaigned for a seat in the U.S. Senate, the defendant

directed an effort to raise an additional $450,571.65 from Mr. Uihlein based on misrepresentations

that the money would be used to finance a legitimate independent expenditure by Center for the

American Future, a purported nonprofit organization created by Mr. Posey.  (Gov't Exs. 2014-2d,

2014-2g).  In reality, the defendant personally supervised and directed the activities of Mr. Posey

and Center for the American Future, which used Mr. Uihlein's donation to finance the mailing of

hundreds of thousands of phony newspapers to Texas voters praising Mr. Stockman and attacking

his opponent in the March 2014 primary election for U.S. Senate.  Following his defeat in that

election, the defendant caused the remainder of Mr. Uihlein's donation, totaling $214,718.51, to

be used to pay a variety of personal and political expenses, including debts associated with the

defendant's Senate campaign.  (Gov't Ex. 2014-1b, 2014-1c, 2014-1d, 2014-1e, 2014-1f, 2014-1g).  In order to conceal the scheme to defraud, the defendant caused his Senate campaign and Mr. Posey to submit false affidavits to the FEC denying any coordination between Mr. Stockman and Mr. Posey in relation to the production and distribution of the phony newspapers.  (Gov't Exs. 2014-6m-1, 2014-7m).

The trial evidence proved overwhelmingly that the defendant orchestrated the entirety of the fraudulent scheme and acquired the entirety of its proceeds prior to distributing any of the proceeds to others.[2]  The amount is known, and the imposition of a personal money judgment against the defendant, to become final at sentencing, is therefore practical and appropriate at this time.  *See* Order Confirming the Interlocutory Sale and Denying the Petition for Writ of Coram Nobis, R. Doc. 656, *United States v. Fisch*, No. 4:11-cr-722 (S.D. Tex. Sept. 5, 2017), at 5-6.  To the extent that personal money judgments are imposed against Mr. Posey and Mr. Dodd (in the lesser amounts that they each obtained), the United States will only collect the $1,250,571.65 to one satisfaction.

The defendant obtained $1,250,571.65 from his fraudulent scheme.  The United States, therefore, moves the Court to impose a personal money judgment against the defendant in the amount of $1,250,571.65.  A proposed Order Imposing Money Judgment is provided for the

---

[2] In 2014, the trial evidence established that the defendant initially caused the $450,571.65 in fraudulently acquired proceeds to be deposited into a postage account in the name of a direct-mail company called CESI, where they were used to pay for the mailing of hundreds of thousands of newspaper-like publications promoting the defendant's candidacy for Senate.  Although this postage account was not in the defendant's name, the evidence established that the defendant exercised effective control over these funds.  Indeed, $214,718.51 of these funds were later refunded to an account in the name of Center for the American Future, over which the defendant also exercised effective control, at the defendant's request.

Court's consideration.

Dated: May 29, 2018                          Respectfully submitted,

RYAN K. PATRICK                              ANNALOU TIROL
United States Attorney                       Acting Chief, Public Integrity Section

Melissa Annis                                Ryan J. Ellersick
Assistant United States Attorney             Robert J. Heberle
                                             Trial Attorneys

                                              /s/ *Robert J. Heberle*
                                             Robert J. Heberle
                                             Trial Attorney
                                             Public Integrity Section
                                             Criminal Division
                                             United States Department of Justice
                                             1400 New York Avenue NW
                                             Washington, DC 20530
                                             Telephone: (202) 514-1412
                                             E-mail: robert.heberle@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on May 29, 2018, I filed the foregoing document with the Clerk of Court using the CM/ECF system, which will cause a true and accurate copy to be sent to counsel of record for defendant Stockman.

/s/ *Robert J. Heberle*
Robert J. Heberle

## CERTIFICATE OF CONFERENCE

Counsel for defendant Stockman was contacted on May 29, 2018, to obtain counsel's position on the government's motion.  Counsel indicated that the defendant is opposed to the motion.

/s/ *Robert J. Heberle*
Robert J. Heberle