# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF TEXAS

## (Houston Division)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | X | |
| Plaintiff- Respondent | X | |
| | X | |
| | X | |
| v | X | Case No. 4:17-CR-00116-002 |
| | X | Hon.  Lee H. Rosenthal, Judge |
| | X | |
| STEPHEN E. STOCKMAN | X | |
| Defendant-Petitioner | X | |

United States Courts
Southern District of Texas
FILED

JUL 1 6 2020

David J. Bradley, Clerk of Court

**EMERGENCY MOTION FOR COMPASSIONATE RELEASE
PURSUANT TO THE FIRST STEP ACT OF 2018;
18 USC SEC. 3582(c)(1)(A) (2018);  AND THE CARES ACT OF
2020**

STEPHEN E. STOCKMAN (Petitioner) files this his, *Pro Se*,

Emergency Motion for Compassionate Release pursuant to the First Step

Act of 2018 (FSA-2018), Section 603(b) which amended 18 USC Sec.

3582(c)(1)(A), Attorney General Barr's Memorandums of March 26,

2020, and April 3, 2020, and the CARES ACT of 2020.   Petitioner

respectfully moves this Court to grant, his Motion for Compassionate

Release based on "Extraordinary and Compelling" Reasons presented by
the existence and increased risk of exposure to the Coronavirus (COVID-
19, and specifically Petitioner's vulnerability to exposure and infection

from, the COVID-19, virus that currently affects  Federal Bureau of
Prisons (BOP) facilities, not limited to  but including the Federal
Correction Complex (FCC) located in Beaumont, Texas and in particular
the Federal Prison Camp (FPC) in Beaumont and the Federal
Correctional Institution Low Security, (FCI-Low) in Beaumont.

Petitioner is designated and assigned to a housing unit in FPC
Beaumont, and from time to time inmates from the FCI-Low in
Beaumont are transferred to FPC.  COVID-19 infections are present in
staff and inmates in FPC and FCI-Low Beaumont.  Petitioner is exposed
to a high risk of infection with COVID-19, in the correctional institute
environment by being housed with approximately 130-140 inmates some
of whom have recently transferred from FCI-Low where there are known
cases of COVID-19 infections within the inmate population.  Since early
June 2020, the infection (with COVID-19) in the inmate population, (in
the FCI-Low and FPC), has increased from zero (0) reported by FCI-Low
Warden Garrido, to 432 inmates, (as of July 14, 2020) and from seven (7)
staff to at least ten (10) staff at all Beaumont units, (based on Petitioner's
information and belief).

Petitioner is especially at risk for a severe reaction (including death)
to, COVID-19 as a result of his age (63) and his multiple co-morbidities,
not limited to but including, insulin dependent diabetes, BMI > 40, and
hypertension, these facts alone establishes, Petitioner's vulnerability in

his existing correctional institution, that are "Extraordinary and Compelling Reasons" warranting relief from this Court.

## RELEVANT PROCEDURAL HISTORY

1. Petitioner was convicted after a jury trial in the United States District Court for the Southern District of Texas, (Case No. 4:17-CR-00116) for violations of mail and wire fraud, money laundering, and violations of statutes governing federal election spending limits and reporting requirement. (See "Judgment in a Criminal Case", Case No. 4:17-CR-00116, Court's File). (See also Exhibit A - Judgment).

Petitioner was sentenced to 120 months imprisonment followed by a three (3) year term of supervised release, $1,014,718.51 in restitution and $2300.00 as a special assessment. Sentence was imposed on November 7, 2018 and Petitioner was remanded to custody. Petitioner was initially incarcerated for seven months in U.S. Immigration and Customs Enforcement's Joe Corley Detention Facility in Conroe, Texas, then transferred to FMC Fort Worth, Texas, and later transferred to FPC Beaumont, Texas.

## EXHAUSTION OF ADMINISTRATIVE APPEAL RIGHTS

2. 18 USC Sec. 3582(c)(1)(A) was amended by FSA-2018 to provide for a defendant to bring an action for a reduction in imposed sentence, subject to either one of two conditions precedent. 18 USC Sec. 3582(c)(1)(A)(i) as amended provides in relevant part:

"(1) in any case-

(A) the court upon motion by the Director of Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal the failure of the Bureau of Prisons to bring a motion on the defendant's behalf **or** (emphasis added) the lapse of 30 days from the receipt of such request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and impose a term of probation  or supervised release with or without conditions that does not exceed the un-served portion of the original term of imprisonment) after consideration of the factors set forth in section 3553(a) [18 USC Sec. 3553(a)] to the extent they are applicable if it finds that -

(i)  extraordinary and compelling reasons warrant such a reduction; or

(ii) … ;

and that such reduction is consistent with applicable policy statements issued by the Sentencing Commission; and

(B)  …"

2.1 Petitioner filed his "Petition" for Compassionate Release, that is, placement into home confinement,  with Warden Garrido (Warden-FCI-Low; the FCI-Low Warden has administrative responsibility for the FPC ), on April 4, 2020 by placing his Petition for Compassionate Release in the inter-institution mail system and addressed to Warden Garrido.  Petitioner received a response to his Petition on April 20, 2020 which denied his request for the Director of the Bureau of Prisons (BOP) to file a motion with the District Court on Petitioner's behalf, however the Warden's response clearly indicated receipt of the Petitioners "Petition" on April 10, 2020.  (See Exhibit B hereto, Response from Warden Garrido).

2.2  Shortly after receiving the Warden's response on April 20, 2020,
Petitioner was informed (verbally) that he was being placed in
quarantine for 14 days and then transferred to home confinement.  On
April 24, 2020 Petitioner was taken to the quarantine facility at FPC
only to be turned away at the door by BOP staff, stating that he was
not eligible for placement in home confinement because he had not
completed 50% of his imposed sentence.  On or about April 26, 2020
the Camp Administrator advised Petitioner that he had been denied for
placement in home confinement irrespective of AG Barr's
Memorandums and the CARES Act of 2020, directing BOP to
transfer "at risk" prisoners to home confinement because of their
vulnerability to a severe reaction to an infection with the COVID-19
virus, without regard to an age or time of service restriction.

## BACKGROUND

3.  Congress first enacted 18 USC Sec. 3582( c)(1) as part of the
Comprehensive Crime Control Act of 1984 to serve as a "safety
valve" for judges to assess whether a sentence reduction is warranted
by factors that previously would have been addressed though the
abolished parole system. S. Rep. No. 98-225 at 121 (1983).  "This
legislative history demonstrates that Congress, in passing the
Comprehensive Crime Control Act of 1984, intended to give district
courts equitable power to employ on  a case by case basis, to correct
sentences when an "Extraordinary and Compelling Reason" indicates
that the initial sentence imposed on an individual no longer serves
legislative objectives".   United States v Millam, No. 91-CR-685
(LAP), 2020 WL 1674058 at *5 (SDNY, Ap. 6, 2020).

3.1 "Congress delegated to the United States Sentencing Commission (USSC), the responsibility of defining what were "extraordinary and compelling reasons" for sentence reduction including the criteria to be applied, and a list of specific examples").  However it would not be until 2007 when the USSC published guidelines stating that extraordinary and compelling reasons include medical conditions, age, family circumstances, and other reasons. ..."  USSG Sec. 1B1.13 app.n.1 (A)-(D).  (See Milam).

## UNITED STATES SENTENCING GUIDELINES SEC. 1B.13 APPLICATION NOTE (A)-(D)-FACTORS TO BE CONSIDERED

3.2 "1. Extraordinary and Compelling Reasons—Provided the defendant meets the requirement of subdivision (2) [regarding absence of danger to the community], extraordinary and compelling reasons exists under any of the circumstances set forth below:

(A).

(i)  The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory).  A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end stage organ disease, and advanced dementia.

(ii) The defendant is---

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

6

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B)  Age of the Defendant--- The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental healthe because of the aging process; and (iii) has served at least 10 years or 75% of his or her term of imprisonment, whichever is less.

(C) Family circumstances---

      (i) …

      (ii) …

(D)  Other reasons-- As determined by the Director of the Bureau of Prisons

      there exists in the defendant's case an extraordinary and compelling

      reason other than, or in combination with, the reasons described in

      subdivisions (A)-(C)."

(See USSG Amendment 799; Reasons for Amendment) (2016).

## **FIRST STEP ACT OF 2018**

4.  The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (FSA-2018) amended 18 USC Sec. (c)(1)(A) to extend the jurisdiction of the United States District Courts to entertain motions for Compassionate Release filed by defendants after "exhaustion of administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on a

defendant's behalf **or the lapse of 30 days from the receipt of such a request by the Warden ...**" (emphasis added).  (FSA-2018, Sec. 603(b), "Increasing the use and transparency of Compassionate Release - Sec. 3582 of Title 18 United States Code)".  Petitioner has exhausted his administrative appeal rights.

4.1      Petitioner is over the age of 60 (CDC previous age guideline). Petitioner suffers from multiple co-morbidities that are contained in the CDC guidelines and Petitioner is "at risk" for a severe complication if infected with the COVID-19 virus.  Petitioner lives in a closed environment in the GB housing unit at FPC Beaumont, Texas, with an inmate population of approximately 120-140 inmates in the GB housing unit.  Petitioner is unable to "social distance" because the cell in which Petitioner lives is approximately 10.5 feet in length X 8 feet in width and which contains two (2) single beds, two (2) lockers, and one (1) desk, it is impossible to remain six (6) feet apart, from other inmates in the housing unit.  Further during the last few weeks inmates from the FCI-Low have transferred into the Camp, from a prison with known COVID-19 infections in the inmate population.  It is not disputed that BOP knows that Petitioner is an at risk elderly inmate, yet Petitioner has been denied designation to home confinement to complete the remainder of his sentence. Petitioner has served approximately 27 months, with approximately 63 months left on his sentence (assuming Petitioner receives all good time and the statutory maximum for half way house and home confinement).  Under FSA-2018 and 18 USC Sec. 3582( c)(1)(A)(i), the District Court has discretion to grant a reduction in sentence to time served and  order a term an increased term of supervised release

or a combination of a term of probation followed by supervised release, to accomplish protecting a vulnerable elderly "at risk" offender, during a time of extraordinarily high risk to personal health and safety resulting from the COVID-19 pandemic and the impossible task that BOP faces in regard to housing prisoners in the correctional institution setting.

## COVID-19--ATTORNEY GENERAL (AG) BARR'S MEMORANDUMS FOR THE DIRECTOR OF THE BUREAU OF PRISONS

5. On March 26, 2020 AG Barr published a directive to the Director of the BOP in response to the BOP lack of progress in implementing AG Barr's first Memorandum directives regarding utilizing home confinement for "at risk" inmates during the COVID-19 outbreak.  The March 26, 2020 Memorandum directed BOP to consider the Center for Disease Control, (CDC) guidelines for evaluation of "at risk" inmates to be transferred to home confinement, in coordination with other factors listed below.  The initial guidance issued by CDC and most medical professionals was that people over 60 years of age and who suffered for certain co-morbidities, not limited to but including, diabetes, hypertension, liver disease, lung disease, and other autoimmune diseases.  During the week of June 21, 2020, CDC issued "updated COVID-19 guidance to adjust the ages and expand the health problems that could lead to more likely lead to severe health complications.  Now CDC includes people in at risk categories who are less than 60 years old and have designated the following as

additional co-morbidities that put people "at risk" for a severe COVID-19 reaction:  chronic kidney disease, COPD, weak immune system due to organ transplant, heart conditions, sickle cell disease, type 1 and type 2 diabetes, asthma, dementia, cerebrovascular diseases, cystic fibrosis, high blood pressure, pulmonary fibrosis, and an inherited blood disorder known as thalassemia.

## EXTRAORDINARY AND COMPELLING REASONS

5.1   In regard to the above listed factors to be considered as guidance from CDC, AG Barr's Memorandums/Guidance to BOP emphasized consideration of the CDC guidelines to be relevant considerations in determining a grant of Compassionate Release.  Petitioner suffers from the following diseases, and is 63 years of age:

1. Hypertension, (high blood pressure);
2. Peripheral neuropathy, (feet and legs);
3. Osteoporosis;
4. Type 2 diabetes, insulin dependent;
5. Dementia;
6. Vitamin D deficiency;
7. Childhood asthma attacks that often required hospitalization; and
8. Malabsorption due to multiple intestinal surgeries.

The above listed medical conditions are fully documented by BOP medical records and outside medical service providers.  Because of Petitioner's susceptibility to infection from COVID-19, coupled with his existing serious

medical conditions, it is unlikely that Petitioner would survive becoming infected with COVID-19 virus.

5.2  AG Barr's March 26, 2020 Memorandum following listed (in part) six (6) considerations to be considered in conjunction with the CDC guidance, are as follows:

(i)    The age and vulnerability of the inmate to COVID-19 in accordance with the CDC guidelines; *(Petitioner is 63 years of age);*

(ii)   the security level of the facility currently holding the inmate, with priority given to inmates residing in low and minimum security facilities; *(Petitioner is designated to and incarcerated in FPC Beaumont a minimum security facility and Petitioner's custody classification issued by BOP is MINIMUM/OUT);*

(iii)  the inmate's conduct in prison, with inmates who have engaged in violent or gang related activity in prison or who have incurred a BOP violation within the last year not receiving priority treatment under this Memorandum;  *(Petitioner has zero (0) incident reports or violations of prison rules, and is not a gang member nor has Petitioner engaged in gang related activities):*

(iv)  the inmate's score under PATTERN with inmates who have anything above a minimum score not receiving priority treatment under this Memorandum; *(Petitioner's PATTERN score is below 10 points and thus is minimum);*

(v)   whether the inmate has a verifiable re-entry plan that will prevent recidivism  and maximize public safety, including verification that the conditions under which the inmate would be confined upon release would

present a lower risk of contracting COVID-19 than the inmate would face in his or her BOP facility;

*(Petitioner will reside with his wife in their home and will be monitored by US Probation or the half way house staff and is unlikely to recidivate; further, living with his wife and no other people in the  home presents a significant reduction in the probability of Petitioner contracting COVID-19, from living in a correctional housing unit with 120-140 other inmates in conditions, (including but not limited to, possible exposure to inmates with COVID-19 who have now transferred into the housing units at FPC Beaumont),  that make "social  distancing"  impractical);*

(vi)  the inmate's crime of conviction and an assessment of the danger posed to the community.  Some offenses such as sex offenses, will render an inmate ineligible for home detention. ... ;  (See Exhibit C- AG Barr's March 26, 2020 Memorandum).

*(Petitioner has no history of violence nor has Petitioner ever been charged with or convicted on a sex offense.)*

## CORONAVIRUS AID, RELIEF, AND ECONOMIC SECURITY ACT- CARES ACT OF 2020

6.    On March 24, 2020, Congress passed and the President signed the Coronavirus Aid, Relief, and Economic Security Act of 2020 (CARES Act of 2020), Pub L. No. 116-136.  Section 12003(b)(2) of the CARES Act of 2020 "expanded the cohort of inmates who can be considered for home confinement".  (See United States v Reeves, No. 18-00294, 2020 LEXIS 63552 (ND LA. April 2020) (denied compassionate relief because Reeves

filed his Section 3582(c)(1)(A) motion before the of lapse 30 days from receipt of the Warden of a petition for compassionate release, …).

6.1     On April 3, 2020 AG Barr issued his third Memorandum to the Director of BOP in regards to COVID-19 and Compassionate Release, instructing BOP to maximize transfer to home confinement of "all appropriate inmates held at FCI Elkton, Elkton Ohio, Oakdale, Louisiana, FCI Danbury  Ct. and other similarly situated BOP facilities".   FPC Beaumont is a similarly situated BOP facility, with a COVID-19 outbreak.

## ARGUMENT AND AUTHORITIES IN SUPPORT OF COMPASSIONATE RELEASE FROM FPC BEAUMONT, TEXAS

7. Based on a communication from the Complex Warden and the other institution's Wardens, (COVID-19 Update), it was represented to the inmate population that as of May 27, 2020 there were zero (0) inmates with COVID-19 and seven (7) staff that had contracted COVID-19. Because there had been little if any testing of the inmate population at FPC Beaumont, it was impossible to determine if any of the inmates have had COVID-19 through the early June 2020 time frame.  What is known as of approximately July 14, 2020 (approximately 48 days from the Warden's COVID-19 update on May 27, 2020) that there are reported to be confirmed 432 cases of COVID-19 infections in the inmate population in FCC Beaumont prisons many of which are in the Camp, FPC Beaumont, where Petitioner is incarcerated.  Further there is now

reported that at least 10 staff members have contracted COVID-19 that work in the facilities in FCC Beaumont.

7.1  Petitioner was initially recognized by staff that he was an "at risk" elderly inmate and that he was scheduled to be sent to quarantine for 14 days and then on to home confinement.  Subsequently Petitioner was denied compassionate release to home confinement based on a stated claim that because he had not completed 50% of his sentence he was not eligible for home confinement.  Problematic with this restriction is that there is no such 50% requirement in AG Barr's Memorandums, nor FSA-2018, and nor is there a restriction in the CARES Act of 2020, that requires service of 50% of the sentence.

7.2  As stated above Petitioner meets the medical conditions required for a finding of "Extraordinary and Compelling Reasons" warranting relief under Sec. 3582( c) (1)(A)(i),  that  in the District Court's discretion may be a reduction in sentence to time served, and a term of probation with or without conditions and or an increase in supervised release, for a term not to exceed the remaining portion of Petitioner's sentence.  (18 USC Sec.3582(c)(1)(A) (2018).

Further the Petitioner meets or exceed all of the stated considerations in AG Barr's Memorandums and guidance.  As of the date of this filing upon information and belief Petitioner states that multiple courts across the United States and several of the District Courts in the Fifth Circuit have exercised this discretion and granted reductions in a sentence with additional probation or supervised release ordered with or without conditions to permit vulnerable inmates who are "at risk" in this time of the COVID-19 virus pandemic to be transferred out of a high risk incarceration environment as such incarceration may no longer meet legislative objectives.

**CONCLUSION**

Based on the foregoing statement of facts, extraordinary and compelling age and medical reasons which place Petitioner "at risk" and vulnerable to an infection with COVID-19 which risk is inherit in the correctional institution setting, as well as the statutory authority and other court decisions relative to "at risk" inmates, Petitioner respectfully requests that this Court grant his Motion for Compassionate Release, that is,  a reduction in sentence to time served, and if warranted either began supervised release or began a special term of probation with or without conditions prior to beginning supervised release, that this Court may determine to be required to serve the ends of justice, as is specifically authorized by 18 USC Sec. 3582(c)(1)(A).

Respectfully submitted,

Stephen E. Stockman, pro se
By POA Patti F. Stockman
Reg. No. 23502-479
FPC Beaumont
P.O. Box 26010
Beaumont, Texas 77720

## CERTIFICATE OF FILING

I Stephen E. Stockman, hereby certify that on the /4/4th day of July, 2020, I filed by mailing the foregoing Motion and Exhibits to:

Office of the Clerk,

United States District Court,

Southern District of Texas,

515 Rusk Street

Houston, Texas 77002.

This certification is made in accordance with 28 USC Sec, 1746 and I declare under the penalty of perjury that the foregoing filing information is within my personal knowledge and is true and correct.

Stephen E. Stockman, pro se

By POA Patti F. Stockman

Reg. No. 23502-479

PC Beaumont

P.O. Box 26010

Beaumont, Texas 77720

AO 245B  (Rev. 09/08) Judgment in a Criminal Case
Sheet 1

United States District Court
Southern District of Texas

**ENTERED**

November 19, 2018

David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
## Southern District of Texas
### Holding Session in Houston

UNITED STATES OF AMERICA

v.

STEPHEN E. STOCKMAN

**JUDGMENT IN A CRIMINAL CASE**

CASE NUMBER: **4:17CR00116-002**

USM NUMBER: 23502-479

☐ See Additional Aliases.

Marlo Pfister Cadeddu
Defendant's Attorney

**THE DEFENDANT:**

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
which was accepted by the court.

☒ was found guilty on count(s)  1-5, 7-12, 14-22, 24, 27 and 28 on April 12, 2018
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. §§ 1341, and 2 | Mail fraud | 01/24/2013 | 1 |
| 18 U.S.C. §§ 1341, and 2 | Mail fraud | 04/11/2012 | 2 |
| 18 U.S.C. §§ 1341, and 2 | Mail fraud | 02/17/2014 | 3 |
| 18 U.S.C. §§ 1341, and 2 | Mail fraud | 02/18/2014 | 4 |

☒ See Additional Counts of Conviction.

The defendant is sentenced as provided in pages 2 through 8 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☒ The defendant has been found not guilty on count(s) 6.

☐ Count(s) _____ ☐ is ☐ are dismissed on the motion of the .

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

November 7, 2018
Date of Imposition of Judgment

Signature of Judge

**LEE H. ROSENTHAL**
**CHIEF U. S. DISTRICT JUDGE**
Name and Title of Judge

November 14, 2018

Date

EXHIBIT A

AO 245B    (Rev. 09/08) Case 4:17-cr-00116   Document 329   Filed in TXSD on 11/14/18   Page 2 of 8
Sheet 1A

Judgment — Page 2 of 8

DEFENDANT: **STEPHEN E. STOCKMAN**
CASE NUMBER: **4:17CR00116-002**

# ADDITIONAL COUNTS OF CONVICTION

| <u>Title & Section</u> | <u>Nature of Offense</u> | <u>Offense Ended</u> | <u>Count</u> |
|---|---|---|---|
| 18 U.S.C. §§ 1343, and 2 | Wire fraud | 03/28/2012 | 5 |
| 18 U.S.C. §§ 1343, and 2 | Wire fraud | 07/02/2012 | 7 |
| 18 U.S.C. §§ 1343, and 2 | Wire fraud | 05/13/2014 | 8 |
| 18 U.S.C. § 371, 52 U.S.C. §§ 30122 and 30109(d)(1)(D), and 18 U.S.C. § 1001(a)(2) | Conspiracy to make conduit contributions and false statements | 04/30/2014 | 9 |
| 18 U.S.C. §§ 1001(a)(2), and 2 | Making false statements | 10/16/2013 | 10 |
| 18 U.S.C. §§ 1001(a)(2), and 2 | Making false statements | 10/19/2013 | 11 |
| 52 U.S.C. §§ 30116(a)(1)(A), 30116(a)(7)(B)(i) and 30109(d)(1)(A)(i), and 18 U.S.C. § 2 | Making excessive contributions | 02/28/2014 | 12 |
| 18 U.S.C. §§ 1957, and 2 | Money laundering | 07/03/2012 | 14 |
| 18 U.S.C. §§ 1957, and 2 | Money laundering | 07/24/2012 | 15 |
| 18 U.S.C. §§ 1957, and 2 | Money laundering | 02/12/2013 | 16 |
| 18 U.S.C. §§ 1957, and 2 | Money laundering | 02/12/2013 | 17 |
| 18 U.S.C. §§ 1957, and 2 | Money laundering | 02/19/2013 | 18 |
| 18 U.S.C. §§ 1957, and 2 | Money laundering | 10/16/2013 | 19 |
| 18 U.S.C. §§ 1957, and 2 | Money laundering | 01/31/2014 | 20 |
| 18 U.S.C. §§ 1957, and 2 | Money laundering | 01/31/2014 | 21 |
| 18 U.S.C. §§ 1957, and 2 | Money laundering | 03/14/2014 | 22 |

☒   See Additional Counts of Conviction.

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
Sheet 1A — Continued

DEFENDANT: **STEPHEN E. STOCKMAN**

Judgment — Page 3 of 8

CASE NUMBER: **4:17CR00116-002**

## ADDITIONAL COUNTS OF CONVICTION

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. §§ 1957, and 2 | Money laundering | 03/24/2014 | 24 |
| 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2 | Money laundering | 03/24/2014 | 27 |
| 26 U.S.C. § 7206(1) | Filing false tax return | 04/14/2014 | 28 |

☐ See Additional Counts of Conviction.

AO 245B    (Rev. 09/Case 4:17-cr-00116 Document 329 Filed in TXSD on 11/14/18 Page 4 of 8
Sheet 2 — Imprisonment

Judgment — Page 4 of 8

DEFENDANT: **STEPHEN E. STOCKMAN**
CASE NUMBER: **4:17CR00116-002**

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a

total term of  120 months.

ONE HUNDRED TWENTY (120) MONTHS as to each of Counts 1-5, 7, 8, 14-22, 24, and 27, SIXTY (60) MONTHS as to each of Counts 9-12, and THIRTY-SIX (36) MONTHS as to Count 28, all counts to run concurrently, for a total of ONE HUNDRED TWENTY (120) MONTHS.

☐ See Additional Imprisonment Terms.

☒ The court makes the following recommendations to the Bureau of Prisons:
That the defendant be designated to a facility that can accomodate the defendant's physical and mental needs, preferrably FMC Fort Worth or FMC Butner, and that the defendant be transferred to such facility as quickly as possible.

☒ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:
   ☐ at _____ ☐ a.m. ☐ p.m. on _____ .
   ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:
   ☐ before 2 p.m. on _____.
   ☐ as notified by the United States Marshal.
   ☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

_____
_____
_____

   Defendant delivered on _____ to _____

at _____, with a certified copy of this judgment.

_____
                                UNITED STATES MARSHAL

By  _____
                                DEPUTY UNITED STATES MARSHAL

Case 4:17-cr-00116 Document 463 Filed on 07/16/20 in TXSD Page 21 of 30

AO 245B    (Rev. 02/18)Judgment in a Criminal Case    Document 329   Filed in TXSD on 11/14/18   Page 5 of 8
           Sheet 3 — Supervised Release

                                                                                        Judgment — Page 5 of  8

DEFENDANT: **STEPHEN E. STOCKMAN**
CASE NUMBER: **4:17CR00116-002**

# SUPERVISED RELEASE

Upon release from imprisonment you will be on supervised release for a term of: <u>3 years.</u>
THREE (3) YEARS as to each of Counts 1-5, 7, 8, 14-22, 24, and 27, and ONE (1) YEAR as to Count 28, all to run concurrently, for a total
of THREE (3) YEARS.

☐   See Additional Supervised Release Terms.

# MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from
   imprisonment and at least two periodic drug tests thereafter, as determined by the court.
       ☐  The above drug testing condition is suspended, based on the court's determination that you
           pose a low risk of future substance abuse. (*check if applicable*)
4. ☒ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A
       or any other statute authorizing a sentence of restitution. *(check if applicable)*
5. ☒ You must cooperate in the collection of DNA as directed by the probation officer. (*check if applicable*)
6. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as
       directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work,
       are a student, or were convicted of a qualifying offense. (*check if applicable*)
7. ☐ You must participate in an approved program for domestic violence. (*check if applicable*)

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

# STANDARD CONDITIONS OF SUPERVISION

☒  See Special Conditions of Supervision.

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed
because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation
officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.   You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your
     release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.   After initially reporting to the probation office, you will receive instructions from the court or the probation officer
     about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.   You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the
     court or the probation officer.
4.   You must answer truthfully the questions asked by your probation officer.
5.   You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living
     arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying
     the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72
     hours of becoming aware of a change or expected change.
6.   You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to
     take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.   You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from
     doing so. If you do not have full-time employment, you must try to find full-time employment, unless the probation officer excuses
     you from doing so. If you plan to change where you work or anything about your work (such as your position or your job
     responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10
     days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of
     becoming aware of a change or expected change.
8.   You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of
     a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.   If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10.  You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was
     designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11.  You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without
     first getting the permission of the court.
12.  If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may
     require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the
     person and confirm that you have notified the person about the risk.
13.  You must follow the instructions of the probation officer related to the conditions of supervision.

AO 245B    (Rev. 09/08) Judgment in a Criminal Case
           Sheet 3C — Supervised Release

DEFENDANT: **STEPHEN E. STOCKMAN**
CASE NUMBER: **4:17CR00116-002**

# SPECIAL CONDITIONS OF SUPERVISION

You must participate in a mental-health treatment program and follow the rules and regulations of that program. The probation officer, in consultation with the treatment provider, will supervise your participation in the program, including the provider, location, modality, duration, and intensity. You must pay the cost of the program, if financially able.

You must take all mental-health medications that are prescribed by your treating physician. You must pay the costs of the medication, if financially able.

You must provide the probation officer with access to any requested financial information and authorize the release of any financial information. The probation office may share financial information with the U.S. Attorney's Office.

You must not incur new credit charges or open additional lines of credit without the approval of the probation officer.

☐   See Additional Special Conditions of Supervision.

Case 4:17-cr-00116 Document 463 Filed on 07/16/20 in TXSD Page 23 of 30
AO 245B (Rev. 09/08) Judgment in a Criminal Case Document 329 Filed in TXSD on 11/14/18 Page 7 of 8
Sheet 5 — Criminal Monetary Penalties

DEFENDANT: **STEPHEN E. STOCKMAN**
CASE NUMBER: **4:17CR00116-002**

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Fine | Restitution |
|---|---|---|---|
| **TOTALS** | $2,300.00 | | $1,014,718.51 |

A $100 special assessment is ordered as to each of Counts 1-5, 7, 8, 14-22, 24, 27 and 28, for a total of $2,300.

☐ See Additional Terms for Criminal Monetary Penalties.

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☒ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal payees must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| The Rothschild Art Foundation | | $385,000.00 | |
| The Rothschild Charitable Foundation Inc. | | 65,000.00 | |
| Ed Uihlein Family Foundation | | 350,000.00 | |
| Ed Uihlein | | 214,718.51 | |

☐ See Additional Restitution Payees.

| **TOTALS** | $0.00 | $1,014,718.51 | |
|---|---|---|---|

☐ Restitution amount ordered pursuant to plea agreement $ _____

☒ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐ the interest requirement is waived for the ☐ fine ☐ restitution.

    ☐ the interest requirement for the ☐ fine ☐ restitution is modified as follows:

☐ Based on the Government's motion, the Court finds that reasonable efforts to collect the special assessment are not likely to be effective. Therefore, the assessment is hereby remitted.

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B    (Rev. 09/08) Case 4:17-cr-00116 Document 329 Filed in TXSD on 11/14/18 Page 8 of 8
Sheet 6 — Schedule of Payments

Judgment — Page 8 of  8

DEFENDANT: **STEPHEN E. STOCKMAN**
CASE NUMBER: **4:17CR00116-002**

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A  ☒  Lump sum payment of $2,300.00_____ due immediately, balance due

    ☐  not later than _____, or

    ☒  in accordance with ☐ C, ☐ D, ☐ E, or ☒ F below; or

B  ☐  Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

C  ☐  Payment in equal _____ installments of _____ over a period of _____ , to commence _____ days after the date of this judgment; or

D  ☐  Payment in equal _____ installments of _____ over a period of _____ , to commence _____ days after release from imprisonment to a term of supervision; or

E  ☐  Payment during the term of supervised release will commence within _____ days after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F  ☒  Special instructions regarding the payment of criminal monetary penalties:

    Payable to: Clerk, U.S. District Court, Attn: Finance, P.O. Box 61010, Houston, TX 77208

    Balance due in 50% of any wages earned while in prison in accordance with the Bureau of Prisons' Inmate Financial Responsibility Program. Any balance remaining after release from imprisonment shall be due in monthly installments of no less than $500 to commence 60 days after release from imprisonment to a term of supervision.

    * In reference to the amount below, the Court-ordered restitution shall be joint and several with any co-defendant who has been or will be ordered to pay restitution under this docket number.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☒  Joint and Several

| **Case Number Defendant and Co-Defendant Names (including defendant number)** | **Total Amount** | **Joint and Several Amount** | **Corresponding Payee, if appropriate** |
|---|---|---|---|
| SEE COURT'S ORDER ABOVE * | | | |

☐  See Additional Defendants and Co-Defendants Held Joint and Several.

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☒  The defendant shall forfeit the defendant's interest in the following property to the United States:
As set forth in the order of forfeiture executed by this Court on July 3, 2018, and as amended following the sentencing hearing on November 7, 2018.

☐  See Additional Forfeited Property.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

**RESPONSE TO INMATE REQUEST TO STAFF**
**INMATE: STOCKMAN, STEPHEN**
**REGISTER NO: 23502-478**
**INSTITUTION: FCC BEAUMONT (CAMP)**
**UNIT: GB**

This is in response to your correspondence received
April 15, 2020, wherein you request a reduction in sentence (RIS)
based on concerns about COVID-19. ~~your request is denied.~~

Title 18 of the United States Code, section 3582(c)(1)(A), allows
a sentencing court, on motion of the Director of the BOP, to
reduce a term of imprisonment for extraordinary or compelling
reasons.  BOP Program Statement No. 5050.50, Compassionate
Release/Reduction in Sentence: Procedures for Implementation of
18 U.S.C. §§ 3582(c)(1)(A) and 4205(g), provides guidance on the
types of circumstances that present extraordinary or compelling
reasons, such as the inmate's terminal medical condition;
debilitated medical condition; status as a "new law" elderly
inmate, an elderly inmate with medical conditions, or an "other
elderly inmate"; the death or incapacitation of the family member
caregiver of the inmate's child; or the incapacitation of the
inmate's spouse or registered partner.  Your request has been
evaluated consistent with this general guidance.

The BOP is taking extraordinary measures to contain the spread of
COVID-19 and treat any affected inmates.  We recognize that you,
like all of us, have legitimate concerns and fears about the
spread and effects of the virus.  However, your concern about
being potentially exposed to, or possibly contracting, COVID-19
does not currently warrant an early release from your sentence.
Accordingly, your RIS request is denied at this time.

If you are not satisfied with this response to your request, you
may commence an appeal of this decision via the administrative
remedy process by submitting your concerns on the appropriate
form (BP-9) within 20 days of the receipt of this response.

In response to your request for home confinement, the Bureau of
Prisons is utilizing the full scope of its various authorities to
ensure that inmates at heightened risk of complications from
COVID-19 are identified and housed safely and appropriately given
their specific needs and circumstances. This includes modified

EXHIBIT B

institution operations; routine staff and inmate medical
screening; use of the home confinement authority, where
appropriate, based on guidance from the Attorney General; and use
of compassionate release for appropriate inmates who have
existing terminal and debilitated medical conditions or who are
elderly and nearing the end of their sentence, as provided for in
current agency policy.

The CARES Act authorizes the Attorney General to expand the
cohort of inmates who can be considered for home confinement upon
his findings of emergency conditions which are materially
affecting the function of the BOP.  On April 3, 2020, the
Attorney General made that finding and authorized the Director of
the BOP to immediately maximize appropriate transfers to home
confinement of all appropriate inmates held at FCI Oakdale, FCI
Danbury, FCI Elton, and other similarly situated BOP facilities
where COVID-19 is materially affecting operations.

Pursuant to the Attorney's General's direction, the BOP will
continue to monitor the situation at all of its facilities, to
include FCC Beaumont, and will take swift action to exercise its
expanded home confinement authority for any inmate who is found
to be at risk for COVID-19 and suitable for home confinement.

Staff have reviewed your sentence for potential placement on home
confinement in connection with the current criteria.  After
careful review, staff submitted your paperwork on April 15, 2020,
to the Residential Re-entry Center (RRC) for potential approval
in home confinement placement.  Once the RRC makes a
determination, you will be informed of that decision.

I trust this information addresses your concern.


_____              _____
F. J. Garrido, Warden                         Date



**Office of the Attorney General**
**Washington, D. C. 20530**

March 26, 2020

MEMORANDUM FOR DIRECTOR OF BUREAU PRISONS

FROM:              THE ATTORNEY GENERAL

SUBJECT:           Prioritization of Home Confinement As Appropriate in Response to
                   COVID-19 Pandemic

Thank you for your tremendous service to our nation during the present crisis.  The current situation is challenging for us all, but I have great confidence in the ability of the Bureau of Prisons (BOP) to perform its critical mission during these difficult times.  We have some of the best-run prisons in the world and I am confident in our ability to keep inmates in our prisons as safe as possible from the pandemic currently sweeping across the globe.  At the same time, there are some at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities.  I am issuing this Memorandum to ensure that we utilize home confinement, where appropriate, to protect the health and safety of BOP personnel and the people in our custody.

## I.   TRANSFER OF INMATES TO HOME CONFINEMENT WHERE APPROPRIATE TO DECREASE THE RISKS TO THEIR HEALTH

One of BOP's tools to manage the prison population and keep inmates safe is the ability to grant certain eligible prisoners home confinement in certain circumstances.  I am hereby directing you to prioritize the use of your various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic.  Many inmates will be safer in BOP facilities where the population is controlled and there is ready access to doctors and medical care.  But for some eligible inmates, home confinement might be more effective in protecting their health.

In assessing which inmates should be granted home confinement pursuant to this Memorandum, you are to consider the totality of circumstances for each individual inmate, the statutory requirements for home confinement, and the following non-exhaustive list of discretionary factors:

- The age and vulnerability of the inmate to COVID-19, in accordance with the Centers for Disease Control and Prevention (CDC) guidelines;

*EXHIBIT C*

Memorandum from the Attorney General                                    Page 2
Subject: Prioritization of Home Confinement As Appropriate in Response to COVID-19
       Pandemic

- The security level of the facility currently holding the inmate, with priority given to inmates residing in low and minimum security facilities;

- The inmate's conduct in prison, with inmates who have engaged in violent or gang-related activity in prison or who have incurred a BOP violation within the last year not receiving priority treatment under this Memorandum;

- The inmate's score under PATTERN, with inmates who have anything above a minimum score not receiving priority treatment under this Memorandum;

- Whether the inmate has a demonstrated and verifiable re-entry plan that will prevent recidivism and maximize public safety, including verification that the conditions under which the inmate would be confined upon release would present a lower risk of contracting COVID-19 than the inmate would face in his or her BOP facility;

- The inmate's crime of conviction, and assessment of the danger posed by the inmate to the community. Some offenses, such as sex offenses, will render an inmate ineligible for home detention. Other serious offenses should weigh more heavily against consideration for home detention.

In addition to considering these factors, before granting any inmate discretionary release, the BOP Medical Director, or someone he designates, will, based on CDC guidance, make an assessment of the inmate's risk factors for severe COVID-19 illness, risks of COVID-19 at the inmate's prison facility, as well as the risks of COVID-19 at the location in which the inmate seeks home confinement. We should not grant home confinement to inmates when doing so is likely to increase their risk of contracting COVID-19. You should grant home confinement only when BOP has determined—based on the totality of the circumstances for each individual inmate—that transfer to home confinement is likely not to increase the inmate's risk of contracting COVID-19.

## II.    **PROTECTING THE PUBLIC**

While we have an obligation to protect BOP personnel and the people in BOP custody, we also have an obligation to protect the public. That means we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19, or put the public at risk in other ways. I am therefore directing you to place any inmate to whom you grant home confinement in a mandatory 14-day quarantine period before that inmate is discharged from a BOP facility to home confinement. Inmates transferred to home confinement under this prioritized process should also be subject to location monitoring services and, where a court order is entered, be subject to supervised release.

We must do the best we can to minimize the risk of COVID-19 to those in our custody, while also minimizing the risk to the public. I thank you for your service to the country and assistance in implementing this Memorandum.

July _14_, 2020

Office of the Clerk
United States District Court
Southern District of Texas
515 Rusk Street
Houston, Texas 77002

Re:  Case No. 4:17-CR-00116;  United States v Stockman.

Dear Madam, Sir:

 Please find herewith the following pleading which I respectfully request that you file and set on the Court's "Emergency Motion" docket for an expedited review:

1. Emergency Motion for Compassionate Release Pursuant to the First Step Act of 2018; 18 USC Sec. 3582(c)(1)(A), and the Cares Act of 2020.

 Please file/date stamp a copy of this letter of transmittal and return to the under signed.  I have enclosed an addressed, postage paid envelope for your convenience.

 Thanking you in advance for your assistance in this matter.

        Sincerely,

        *Stephen E. Stockman*

        Stephen E. Stockman  *by POA*
            *PATTI*
        Reg. No. 23502-479  *Stockman*
        FPC Beaumont
        P. O. Box 26010
        Beaumont, Texas 77720

FedEx
Express

Exp

**URGENT**

Name
Company
Address
City, State, Zip
Telephone

PUT IS DRAWERS

PLEASE ANSWER ASAP

FROM

RT **479**
FZ

4
10:30
**B**
0580
07.15

RT **479**
FZ

4
10:30
**B43 EIXA**
0580
07.16

United States Courts
Southern District of Texas
FILED

JUL 1 6 2020

David J. Bradley, Clerk of Court



ORIGIN ID:HGYA  (281) 996-6900
STEPHEN
#230C  STOCKMAN
PO BOX 26010
FPC BEAUMONT
BEAUMONT TX 77720
UNITED STATES US

SHIP DATE: 14JUL20
ACTWGT: 0.50 LB
CAD: 6990209/SSFE02110

BILL CREDIT CARD

TO  OFFIC OF THE CLERK
UNITED STATES DISTRICT COURT
515 RUSK STREET
SOUTHERN DISTRICT OF TEXAS
HOUSTON TX 77002
(900) 000-0000
PO1

REF:

DEPT:

TRK#
[0201] **3948 3612 0580**

WED - 15 JUL 10:30A
**PRIORITY OVERNIGHT**

77002
TX-US  IAH

**E**

FedEx
Express

J20112004240109

5SEJ3/C8A6/FE4A